*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 17, 2021

Plaintiff-Appellee,

v

No. 352303
Oakland Circuit Court

EUGENE JAMES BEARDEN,

LC No. 2019-270167-FC

Defendant-Appellant.

Before: MURRAY, C.J., and FORT HOOD and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for two counts of armed robbery, MCL 750.529. Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 47 to 97 years' imprisonment for each count. On appeal, defendant argues that (1) he was denied his right to a fair trial due to the erroneous admission of the victims' on-scene and in-court identifications of defendant, (2) he was denied his right to a fair trial as a result of prosecutorial misconduct, and (3) he was denied his right to effective assistance of counsel because defense counsel failed to provide evidentiary support for his motion to suppress the identification evidence, defense counsel failed to present evidence to support his chosen strategy at trial, defense counsel introduced prejudicial evidence regarding defendant's criminal history, and defense counsel failed to object to the trial court's erroneous jury instructions. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of an armed robbery that occurred on January 23, 2019, in the city of Pontiac, Michigan. On that date, Aline Barker and Dylan Williams arranged to purchase a vehicle from a seller for $1,700. Barker and Williams negotiated with the seller through Facebook and agreed to purchase the vehicle at the seller's home. The seller's Facebook profile name was Geno Beatden.

When Barker and Williams arrived at the seller's home with their two-year-old son, the seller invited them inside. Barker and Williams recognized the seller from the picture associated

-1-

with Geno Beatden's Facebook profile and agreed to enter the seller's home. Upon entering the home, Barker and Williams noticed that there were two other men inside. Barker and Williams spoke with the seller for approximately 20 minutes. At some point, the seller left the room. Shortly thereafter, two men emerged from the basement of the home with masks on. The men were holding firearms and demanded that Barker and Williams turn over their belongings. Barker and Williams gave the individuals approximately $1,700 in cash, a cell phone, a cell phone charger, a tablet, and a debit card from H & R Block. After the robbery, Barker and Williams were able to exit the home, and Barker was able to call the police using a passerby's cell phone.

When the police arrived, Williams informed them that the seller was wearing a multicolored bandana on his head. Defendant lived next door to the home where the robbery occurred, and the police knocked on his door to investigate. Defendant answered the door wearing only boxer shorts, a multicolored bandana, and socks. Defendant allowed the police to search his home. The police found two other individuals inside, Argina Colman and Derrion Spivey. The police also found a cell phone charger, a tablet, a debit card from H & R Block, and $1,662 in cash. The police placed defendant in custody and allowed him to put clothes on. The police escorted defendant outside at which point Barker and Williams both identified defendant as one of the individuals involved in the robbery. Barker and Williams stated that defendant was the individual whom they previously believed to be Geno Beatden.

## II. IDENTIFICATION EVIDENCE

Defendant first contends that the trial court erred when it denied defendant's motion to suppress the victims' identifications of defendant. We disagree.

This Court reviews for clear error a trial court's decision regarding the admission of identification evidence. *People v Blevins*, 314 Mich App 339, 348; 886 NW2d 456 (2016). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. at 348-349 (citation omitted). Issues of law relevant to the admissibility of identification evidence are constitutional matters that this Court reviews de novo. *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020) (citation omitted).

## A. ON-SCENE IDENTIFICATIONS

Identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "Due process protects criminal defendants against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." *Sammons*, 505 Mich at 41 (citation and quotation marks omitted). "Exclusion of evidence of an identification is required when (1) the identification procedure was suggestive, (2) the suggestive nature of the procedure was unnecessary, and (3) the identification was unreliable." *Id*. (citations omitted).

## 1. SUGGESTIVENESS

The parties do not dispute that the identification procedure utilized by the police in this matter was suggestive. We agree. The Michigan Supreme Court has observed that "[t]he

inherently suggestive nature of showups has long been beyond debate." *Id*. The nature of the suggestion is apparent: when the witness is shown only one person, the witness is tempted to presume that he or she is the person the police suspect. *Id*. at 43. In *Sammons*, the Michigan Supreme Court stated that "all we need to observe in order to conclude that the procedure was suggestive is that defendant was shown singly to the witness." *Id*. at 44. In the instant matter, the police showed Barker and Williams defendant and Spivey while they were in police custody. Barker and Williams were not shown any other potential suspects. Accordingly, Barker and Williams were tempted to presume that defendant and Spivey were suspects. For this reason, the identification procedure utilized by the police was suggestive.

## 2. NECESSITY

Although a closer issue, we also agree with defendant that the identification procedure utilized by the police was unnecessary. The Michigan Supreme Court has explained that "[t]here are instances in which a fair and nonsuggestive procedure simply is not possible." *Id*. at 47-48. While there is no specific rule regarding the necessity of a showup identification procedure, the Michigan Supreme Court has provided an example of an instance in which a showup identification procedure was necessary. *Id*. at 48 (citation omitted). In *Sammons*, the Michigan Supreme Court explained that a showup identification procedure was necessary when "the only witness to a murder had been stabbed 11 times and was in the hospital awaiting a major surgery needed to save her life." *Id*. at 48 (citation omitted). Considering that it was unclear whether the only witness would live, it was necessary for the police to bring the suspect to the hospital and show the suspect to the witness for identification. *Id*. (citation omitted). In contrast, the Michigan Supreme Court went on to explain that a showup identification procedure was unnecessary when the suspected perpetrator of a shooting had already been arrested and was shown to the witnesses at the police station four to five hours after the crime occurred. *Id*. In reaching this conclusion, the Michigan Supreme Court rejected the prosecution's argument that "the showup was necessary because it occurred relatively soon after the crime, the investigation was moving quickly, and police were trying to determine whether the investigation was headed in the right direction." *Id*. (quotation marks omitted).

In the instant matter, the police located defendant and Spivey in defendant's home approximately 20 to 30 minutes after the robbery occurred. Additionally, Barker and Williams identified defendant and Spivey approximately 30 minutes after the robbery occurred. Although a prompt identification procedure would allow the police to determine whether defendant and Spivey committed the robbery or whether the actual gunmen were still at large, the showup identification procedure was not necessary. Before arriving at defendant's home, Oakland County Sheriff's Sergeant Todd Hunt had heard over the police radio that defendant was involved in the robbery. Defendant allowed the police to search his home, and the police found several items in defendant's living room that had been taken from Barker and Williams. Given this set of facts, the police had good reason to believe that defendant and Spivey were involved in the robbery such that it was unlikely that there were other armed individuals at large nearby. Unlike the example provided in *Sammons*, there was no indication that Barker and Williams were unable or unwilling to identify the individuals involved in the robbery at a later time. Accordingly, it was not necessary for the police to utilize a suggestive identification procedure in this instance.

## 3. RELIABILITY

We ultimately conclude that, although the identification procedure was unnecessarily suggestive, the witnesses' identifications were reliable such that the identification evidence was admissible. In order to determine whether an identification was reliable, this Court applies the nonexclusive list of factors set forth in *Neil v Biggers*, 409 US 188, 201; 93 S Ct 375; 34 L Ed 2d 401 (1972). *Sammons*, 505 Mich at 50. The factors are "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation." *Id*. at 51 (citation and quotation marks omitted).

The first *Biggers* factor weighs in favor of admissibility because Barker and Williams both had ample opportunities to view defendant at the time of the crime. Barker and Williams both testified that they recognized defendant from his Facebook profile when they arrived. Moreover, Barker and Williams both testified that they spoke with defendant for several minutes before the robbery occurred. Williams also stated that he briefly saw defendant after the robbery occurred.

The second *Biggers* factor weighs in favor of admissibility because Barker and Williams both paid close attention to defendant while interacting with him. Barker and Williams both testified that they recognized defendant from his Facebook profile. Importantly, Barker and Williams testified that they would not have entered the home where the robbery occurred if they had not recognized defendant. Furthermore, Barker and Williams both testified that they spoke with defendant for several minutes before the robbery occurred, thereby indicating that they paid attention to defendant.

The third *Biggers* factor does not weigh strongly in favor of admissibility or strongly against admissibility. There is little evidence in the record regarding the victims' descriptions of defendant's physical characteristics prior to the showup identification. Before identifying defendant, Williams told the police that defendant was wearing a brightly colored bandana with either a motorcycle or a motorcycle logo on it. When the police arrived at defendant's home, defendant was wearing a multicolored bandana, thereby indicating that Williams's description had been accurate. However, it was revealed at trial that defendant's bandana did not have a motorcycle or a motorcycle logo on it. In light of these circumstances, the third *Biggers* factor does not weigh strongly in favor of admissibility or strongly against admissibility.

The fourth *Biggers* factor weighs in favor of admissibility because the victims displayed a high level of certainty when identifying defendant. When Barker and Williams first observed defendant in police custody, they displayed some confusion about "who was wearing what[]" during the robbery. Despite their initial confusion, Barker and Williams promptly concluded that defendant was one of the individuals involved in the robbery but had simply changed his clothes. Moreover, Oakland County Sheriff's Deputy Edgar Osborne opined that Barker and Williams were adamant that they correctly identified the individuals that committed the robbery.

Lastly, the fifth *Biggers* factor weighs in favor of admissibility because Barker and Williams identified defendant shortly after the robbery occurred. In *Sammons*, the Michigan Supreme Court noted that there was "some indicia of reliability" in the witness's identification of

the defendant because the identification occurred four or five hours after the crime had been committed. *Sammons*, 505 Mich at 55. In the instant matter, Barker and Williams identified defendant approximately 30 minutes after the robbery occurred. Thus, the time between the crime and the identification provides at least some indicia of reliability.

In light of the *Biggers* factors, the prosecution met its burden of establishing that the reliability of the identifications outweighed the suggestive nature of the identification procedure. Therefore, the trial court did not err when it declined to exclude the identification evidence.

## B. IN-COURT IDENTIFICATIONS

We note that, even assuming arguendo that the pretrial identification lacked reliability, the in-court identifications of defendant were permissible. If a pretrial identification procedure is impermissibly suggestive, an in-court identification may still be permitted if the prosecution establishes by clear and convincing evidence that there was an independent basis for the in-court identification. *People v Gray*, 457 Mich 107, 115; 577 NW2d 92 (1998). In *People v Kachar*, 400 Mich 78, 95; 252 NW2d 807 (1977), the Michigan Supreme Court listed the following eight factors that a court should consider when determining whether an independent basis exists: (1) the witness's prior relationship with or knowledge of the defendant, (2) the witness's opportunity to observe the offense, (3) the length of time between the offense and the disputed identification, (4) the accuracy of the witness's description of the defendant before the showup identification, (5) any proper or erroneous prior identifications of the defendant, (6) any prior identification of another person as the defendant, (7) the nature of the alleged offense and the physical and psychological state of the witness, and (8) any idiosyncratic or special features of defendant.

The prosecution presented clear and convincing evidence that an independent basis for the in-court identifications existed. The first and second factors set forth in *Kachar* weigh strongly in favor of admissibility. In regard to the first factor, Barker and Williams had prior knowledge of defendant by communicating with defendant through Facebook. Indeed, Barker and Williams were both familiar with defendant's appearance from defendant's Facebook profile picture. In regard to the second factor, Barker and Williams both had ample opportunities to observe defendant while speaking with him for approximately 20 minutes before the robbery occurred.

On the other hand, the third factor set forth in *Kachar* weighs against admissibility and the fourth factor set forth in *Kachar* is neutral. In regard to the third factor, Barker and Williams were robbed on January 23, 2019. The disputed in-court identifications did not occur until the jury trial held on December 2, 2019. Thus, Barker and Williams likely forgot details about the robbery during this period. In regard to the fourth factor, there is little evidence in the record regarding the victims' descriptions of defendant's physical characteristics prior to the showup identification. Again, before identifying defendant, Williams told the police that defendant was wearing a brightly colored bandana with either a motorcycle or a motorcycle logo on it. When the police arrived at defendant's home, defendant was wearing a multicolored bandana, thereby indicating that Williams's description had been accurate. However, it was revealed at trial that defendant's bandana did not have a motorcycle or a motorcycle logo on it.

Further, the fifth and sixth factors set forth in *Kachar* are neutral because there was no evidence that Barker and Williams made any prior identifications of defendant or misidentified

another individual as defendant. Lastly, the seventh factor set forth in *Kachar* weighs in favor of admissibility. Although Barker and Williams acknowledged that the robbery was traumatic, Barker and Williams both had the opportunity to observe defendant before the robbery occurred such that the emotional trauma did not impact their recollection of defendant. Barker and Williams were also unharmed such that injuries did not impact their recollection of defendant.

With all of the above in mind, there was clear and convincing evidence that an independent basis for the in-court identifications existed. Although several factors either weighed against admissibility or were neutral, the first, second, and seventh factors set forth in *Kachar* each weighed strongly in favor of admissibility. Thus, even assuming that the pretrial identifications were obtained through unnecessarily suggestive procedures and lacked reliability, the trial court did not err when it declined to suppress the in-court identifications of defendant.

## III. PROSECUTORIAL MISCONDUCT

Defendant next argues that a new trial is warranted on the basis of prosecutorial misconduct. We disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). During trial, defendant failed to raise an objection to any of the alleged instances of prosecutorial misconduct and failed to request any curative instructions. Thus, this issue is unpreserved. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Norfleet*, 317 Mich App 649, 660 n 5; 897 NW2d 195 (2016) (citation omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

## A. INCONSISTENT WITNESS TESTIMONY

Defendant first argues that the prosecutor engaged in prosecutorial misconduct by knowingly eliciting false testimony from Barker, Williams, and Oakland County Sheriff's Sergeant Kevin Braddock. In doing so, defendant relies upon audio recordings of the victims' interviews with the police on the date of the robbery to show that the victims' accounts of the events were inconsistent. These recordings were not admitted as evidence in the trial court. A party may not expand the record on appeal. *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). Therefore, defendant has failed to support his argument regarding the elicitation of false testimony from Barker, Williams, and Sergeant Braddock with evidence properly before this Court. Moreover, even if the audio recordings had been admitted at trial, the prosecutor did not engage in prosecutorial misconduct by eliciting testimony from Barker, Williams, and Sergeant Braddock that may have been inconsistent with their prior statements.

The test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). It is well settled that a conviction obtained through the knowing use of false testimony violates a defendant's due process

protections guaranteed by the Fourteenth Amendment. *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). However, a prosecutor may call a witness who provides testimony that is inconsistent with their prior statements as long as the prosecutor does not conceal the inconsistencies and has not kept the contents of the prior statements from the defense. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). It is for the jury to decide whether a witness's testimony is credible in the face of conflicting testimony. *People v Canter*, 197 Mich App 550, 565; 496 NW2d 336 (1992). In the instant matter, there is no evidence that the prosecutor attempted to conceal the inconsistencies in the witnesses' prior statements or attempted to keep the contents of the prior statements from the defense. Indeed, defense counsel was afforded ample opportunity to impeach the witnesses' credibility at trial. Accordingly, the prosecutor did not engage in prosecutorial misconduct by eliciting testimony from Barker, Williams, and Sergeant Braddock that may have been inconsistent with their prior statements.

## B. JAIL CALLS

Defendant next argues that the prosecutor engaged in prosecutorial misconduct by mischaracterizing defendant's statements during jail calls defendant made to defendant's girlfriend, Lacrisha Strawder. We disagree.

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008) (citation omitted). "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Id*. at 241 (citation omitted). However, prosecutors "are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*. (citation omitted).

Defendant asserts that the prosecutor mischaracterized defendant's statements made during a telephone call on January 23, 2019, in which defendant told Strawder to "delete his account." During the telephone call, defendant and Strawder were discussing the robbery. Strawder informed defendant that a woman who had been "at the house next door" had posted on Facebook about defendant asking others to contact her if they knew defendant. At that point, defendant instructed Strawder to "delete my page," and Strawder replied, "that's already taken care of." Defendant proceeded to ask Strawder whether she was "able to get any of the money back," and Strawder replied that she was not able to do so. In another call on February 9, 2019, defendant and Strawder were discussing defendant's "account" but failed to specify which account they were referring to. Strawder told defendant that it was no longer possible to view the picture associated with defendant's "profile." Defendant then replied that "she probably got messages . . . but you can't even prove that that's my messages." Immediately after defendant stated as such, Strawder told defendant that the police asked her whether defendant had a Facebook page.

Defendant's telephone conversations with Strawder gave rise to a reasonable inference that defendant's request to delete his Facebook page amounted to an acknowledgment of guilt. At the time defendant initially asked Strawder to delete his account, defendant and Strawder were discussing the details of the robbery. Although it is somewhat unclear, it appears that Strawder informed defendant that Barker had posted about defendant on Facebook asking others to provide information about defendant. During the February 9, 2019 telephone call, defendant and Strawder

were discussing an unspecified "account" that Strawder had deleted for defendant. Defendant stated that, because the account was deleted, it was no longer possible to view messages that had been sent from the account. Immediately after defendant made this comment, Strawder told defendant that the police had asked about defendant's Facebook profile. These circumstances gave rise to a reasonable inference that defendant was attempting to conceal evidence of the robbery that was contained on his Facebook account. Defendant and Strawder discussed incriminating messages and brought up Facebook at several points during their conversations. Moreover, Sergeant Braddock testified that he was unable to investigate defendant's Facebook account because it had been deleted. Therefore, the prosecutor argued a reasonable inference from the evidence to support his theory of the case such that the prosecutor did not engage in prosecutorial misconduct.

Defendant asserts that there was no contextual basis to support the prosecutor's assertion that defendant was referring to the robbery when he told Strawder that "it would have been worth it if I could have zoom zoom." During a telephone call on February 9, 2019, defendant and Strawder were discussing his arrest as well as other topics. Strawder told defendant that the situation irritated her, and defendant replied as follows: "It would have been worth it if we could have zoom zoom . . . I couldn't get out the house, couldn't find no clothes." Defendant then stated that "all she want is her shit back." When considered in context, defendant appeared to be discussing the robbery when he stated that it would have been worth it if he was able to "zoom zoom." Defendant and Strawder had been discussing the robbery throughout their telephone conversation. Additionally, defendant indicated that he was unable to find clothes and leave his house. At trial, the prosecution presented evidence that the police arrived at defendant's home shortly after the robbery occurred and found that defendant was not wearing clothes when he answered his door. Given these circumstances, the prosecutor argued a reasonable inference from the evidence to support his theory of the case such that the prosecutor did not engage in prosecutorial misconduct.

Lastly, defendant argues that the prosecutor introduced inadmissible hearsay evidence in bad faith by introducing a jail call in which Strawder stated that Colman informed her that the police arrived at defendant's home "shortly after you all ran in." "[P]rosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999) (citation omitted). "The prosecutor is entitled to attempt to introduce evidence that he legitimately believes will be accepted by the court, as long as that attempt does not prejudice the defendant." *Id*. at 660-661 (citation omitted). Although this evidence was clearly an out of court statement, it is unclear whether it was offered to prove the truth of the matter asserted or whether it was offered to show that defendant failed to dispute his own involvement in the crime. Thus, defendant has failed to demonstrate bad faith on the part of the prosecution. Moreover, an unpreserved claim of prosecutorial misconduct will not warrant relief unless a curative instruction could not have remedied any prejudicial effect. *Unger*, 278 Mich App at 235. Any error in the admission of the statement could have been remedied by a timely objection and an instruction to disregard the statement. Defendant has failed to establish prosecutorial misconduct warranting reversal.

## C. DEFENDANT'S PRIOR CRIMES

Defendant next argues that the prosecutor engaged in prosecutorial misconduct by mischaracterizing defendant's testimony regarding his guilty pleas to prior crimes. We disagree.

"The prosecution is permitted to comment on and draw inferences from the testimony of a witness, including a criminal defendant, and may argue that the witness is not worthy of belief." *People v Pegenau*, 447 Mich 278, 299; 523 NW2d 325 (1994) (citation omitted). During trial, defense counsel introduced evidence of defendant's prior convictions and the fact that defendant pleaded guilty to those charges. Defendant stated that he pleaded guilty because he actually committed the crimes. Defense counsel then emphasized that the instant matter proceeded to trial, and defendant stated that he had no involvement in the robbery. On cross-examination, defendant stated that "I have pled [sic] guilty to all my crimes that I've committed . . . I didn't fight them. I didn't take them to trial." The implication of defendant's testimony regarding his prior guilty pleas was that defendant pleads guilty when he actually commits a crime, and, because defendant declined to plead guilty in the instant matter, defendant must not have committed the robbery. The prosecutor properly drew this inference from defendant's testimony and commented that defendant's theory was not worthy of belief given the evidence of defendant's guilt. Accordingly, the prosecution did not mischaracterize defendant's testimony and did not engage in prosecutorial misconduct in this regard.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that he is entitled to a new trial because his counsel was ineffective. We disagree.

Where no evidentiary or *Ginther*[1] hearing has occurred, this Court reviews claims of ineffective assistance of counsel for errors apparent on the record. *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op at 6. "Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law[.]" *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016) (citation omitted). A trial court's findings of fact, if any, are reviewed for clear error, while questions of constitutional law are reviewed de novo. *Id*. A trial court's finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014).

A defendant seeking relief based upon a claim of ineffective assistance of counsel bears the burden of showing "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (citation omitted). "A counsel's performance was deficient if it fell below an objective standard of professional reasonableness. The performance prejudiced the defense if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different." *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010). There is a strong presumption that counsel's conduct fell within a wide range of professional assistance. *People v*

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Thus, defendant must overcome the strong presumption that the challenged action might be considered sound trial strategy. *Id.*

## A. MOTION TO SUPPRESS

Defendant argues that defense counsel was ineffective for failing to support his motion to suppress the witnesses' identifications with evidence. Specifically, defendant argues that (1) defense counsel should have introduced studies or articles indicating that showup identification procedures are highly suggestive, and (2) defense counsel should have introduced evidence that defendant was already in handcuffs at the time of the showup identification to show that the identification could have been conducted at a later time such that it was unnecessary.

First, defense counsel's performance did not fall below an objective standard of professional reasonableness when defense counsel failed to introduce studies or articles concluding that showup identification procedures are highly suggestive. The Michigan Supreme Court has observed that "[t]he inherently suggestive nature of showups has long been beyond debate." *Sammons*, 505 Mich at 41. Thus, defense counsel was not required to introduce studies or articles to establish that the showup identification was inherently suggestive. For this reason, defendant has failed to overcome the strong presumption that defense counsel's conduct fell within a wide range of professional assistance.

Next, defense counsel's performance did not fall below an objective standard of professional reasonableness when defense counsel failed to introduce evidence that defendant was already in handcuffs such that the showup was unnecessary. During the evidentiary hearing, Barker testified that she identified defendant after the police escorted defendant out of his home. Barker's testimony showed that defendant was in police custody. Accordingly, it was not crucial for defense counsel to elicit testimony that defendant was in handcuffs in order to show that the identification could have been conducted at a later time. Even assuming that defense counsel's performance was objectively deficient, defendant has failed to establish prejudice. As previously addressed, although the showup identification procedure utilized in this case was suggestive and unnecessary, the identifications were still admissible because they were otherwise reliable. Thus, any additional evidence regarding necessity would not have altered the outcome of the motion to suppress.

## B. IMPEACHMENT OF THE VICTIMS

Defendant argues that defense counsel was ineffective by failing to impeach Barker and Williams with prior inconsistent testimony regarding their immediate recognition of defendant as the individual in the photograph associated with Geno Beatden's Facebook account. We disagree.

Although defendant asserts that Barker and Williams did not immediately recognize defendant as the individual in the photograph associated with Geno Beatden's Facebook account, defendant fails to identify any evidence of record supporting his assertion. Instead, defendant argues that Barker and Williams misidentified defendant as Geno Beatden because they originally believed that defendant was one of the individuals holding a firearm during the robbery. The fact that Barker and Williams originally believed that defendant was one of the individuals holding a firearm during the robbery bears no relevance to their recognition of defendant as the individual

in the photograph associated with Geno Beatden's Facebook account. Accordingly, defense counsel's performance did not fall below an objective standard of professional reasonableness when defense counsel failed to impeach Barker and Williams regarding their immediate recognition of defendant as the individual in the photograph associated with Geno Beatden's Facebook account.[2]

## C. EXPERT TESTIMONY

Defendant argues that defense counsel was ineffective by failing to present expert testimony to establish that showup identification procedures are unreliable. We disagree.

A decision regarding whether to present expert testimony is presumed to be a permissible exercise of trial strategy. *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999). Defendant has failed to overcome the presumption in this matter. During trial, defense counsel cross-examined Barker and Williams regarding their identifications of defendant. In doing so, defense counsel emphasized discrepancies in the victims' accounts of the robbery, discrepancies in the victims' descriptions of defendant, and the fact that Barker and Williams identified defendant while they were together such that they may have influenced one another. Thus, defendant chose a reasonable trial strategy in cross-examining the prosecution's witnesses to undermine their identifications of defendant without need to resort to an expert witness.

Even assuming that defense counsel's performance fell below an objective standard of professional reasonableness when defense counsel failed to present expert testimony, defendant has failed to establish that the result of the proceeding would have been different if an expert had testified. As previously addressed, there was an independent basis for Barker and Williams to identify defendant in the courtroom. Thus, even if an expert could have persuaded the jury to disregard the victim's identification of defendant on the date of the robbery, the victims would still have identified defendant in the courtroom.

## D. JURY INSTRUCTIONS

---

[2] We note that, since filing his brief on appeal, defendant has filed a motion to remand with this Court, wherein defendant has asked this Court to supplement the record with a recorded interview of and written statements from the victims. Defendant notes that the recorded interview in particular evidences contradictory statements between the victims' beliefs immediately after the incident and during trial. We note that the evidence is not as contradictory as defendant suggests. While the two victims do appear to indicate in the interview in contradiction to their testimony that the individual with the bandana was not apprehended and identified immediately following the robbery, the interview as a whole is largely corroborative. Moreover, defendant's counsel had sound reason to avoid bringing further attention to the issue to avoid the jury being further reminded of the extensive evidence that corroborated the victims' trial testimony, including their written statements, police testimony concerning the bandana, and the bandana itself, which was admitted as evidence at trial. We denied defendant's motion. *People v Bearden*, unpublished order of the Court of Appeals, entered May 20, 2021 (Docket No. 352303).

Defendant argues that defense counsel was ineffective for failing to object to the trial court's omission of several necessary jury instructions, including M Crim JI 7.8, M Crim JI 7.4, M Crim JI 5.2, M Crim JI 5.11, and M Crim JI 3.4 or M Crim JI 4.11. We disagree.

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Thorne*, 322 Mich App 340, 565; 912 NW2d 560 (2017) (citation and quotation marks omitted). "Failing to request a particular jury instruction can be a matter of trial strategy." *Id*. (citation and quotation marks omitted).

## 1. M CRIM JI 7.8

Defendant argues that defense counsel was ineffective for failing to object to the trial court's omission of M Crim JI 7.8 after initially requesting the jury instruction. We disagree. At the outset, we acknowledge that defense counsel asserted that M Crim JI 7.8 should be included in the jury instructions and failed to object when it was not. However, defendant has failed to rebut the presumption that defense counsel's failure to object to the omission constituted sound trial strategy. M Crim JI 7.8 provides as follows:

> (1) One of the issues in this case is the identification of the defendant as the person who committed the crime. The prosecutor must prove beyond a reasonable doubt that the crime was committed and that the defendant was the person who committed it.

> (2) In deciding how dependable an identification is, think about such things as how good a chance the witness had to see the offender at the time, how long the witness was watching, whether the witness had seen or known the offender before, how far away the witness was, whether the area was well-lighted, and the witness's state of mind at that time.

> (3) Also, think about the circumstances at the time of the identification, such as how much time had passed since the crime, how sure the witness was about the identification, and the witness's state of mind during the identification.

> [(4) You may also consider any times that the witness failed to identify the defendant, or made an identification or gave a description that did not agree with (his / her) identification of the defendant during trial.]

> (5) You should examine the witness's identification testimony carefully. You may consider whether other evidence supports the identification, because then it may be more reliable. However, you may use the identification testimony alone to convict the defendant, as long as you believe the testimony and you find that it proves beyond a reasonable doubt that the defendant was the person who committed the crime. [M Crim JI 7.8.]

At trial, the prosecution presented evidence that Barker and Williams recognized defendant from his picture on Facebook and spoke with defendant for several minutes before experiencing any trauma associated with an armed robbery. The prosecution also presented evidence that Barker and Williams identified defendant only 30 minutes after the robbery occurred, that defendant spoke

with Strawder about the details of the robbery, and that the police found the stolen items in defendant's home such that other evidence supported the identifications. This evidence bolstered the victims' identifications of defendant in light of the standards set forth in M Crim JI 7.8. Accordingly, defense counsel may have made the strategic decision to refrain from raising an objection in order for the jury to consider the identification evidence without the benefit of the standards set forth in M Crim JI 7.8.

## 2. M CRIM JI 7.4

Next, defendant argues that defense counsel was ineffective for failing to object to the trial court's omission of M Crim JI 7.4. We disagree. Initially, we note that defense counsel did not assert that M Crim JI 7.4 should be included in the jury instructions and did not object when it was not. At trial, defendant testified that he was sleeping in his home when the robbery occurred. Thus, defendant presented an alibi defense. M Crim JI 7.4 provides as follows:

(1) You have heard evidence that the defendant could not have committed the alleged crime because [he / she] was somewhere else when the crime was committed.

(2) The prosecutor must prove beyond a reasonable doubt that the defendant was actually there when the alleged crime was committed. The defendant does not have to prove [he / she] was somewhere else.

(3) If, after carefully considering all the evidence, you have a reasonable doubt about whether the defendant was actually present when the alleged crime was committed, you must find [him / her] not guilty. [M Crim JI 7.4.]

Considering that M Crim JI 7.4 provides that defendant does not have the burden of proving his alibi, defense counsel's performance fell below an objective standard of reasonableness when defense counsel failed to request M Crim JI 7.4.

Nevertheless, defendant has failed to establish that he was prejudiced by defense counsel's deficient performance in this regard. First, the trial court instructed the jury that the prosecution had the burden of proving every element of the charged offenses beyond a reasonable doubt. Furthermore, Barker and Williams both testified that defendant was present when the robbery occurred. Additionally, the prosecution presented evidence that defendant spoke with Strawder about the details of the robbery, and the police found the stolen items in defendant's home such that other evidence supported the victims' version of events. Accordingly, defendant has failed to establish that he was deprived of the effective assistance of counsel in this regard.

## 3. M CRIM JI 5.2 AND M CRIM JI 5.11

Defendant argues that defense counsel was ineffective for failing to object to the trial court's omission of M Crim JI 5.2 and M Crim JI 5.11 after requesting the jury instructions. We disagree. Initially, we acknowledge that defense counsel asserted that M Crim JI 5.2 and M Crim JI 5.11 should be included in the jury instructions and failed to object when they were not. M Crim JI 5.2 provides as follows:

You should not decide this case based on which side presented more witnesses. Instead, you should think about each witness and each piece of evidence and whether you believe them. Then you must decide whether the testimony and evidence you believe proves beyond a reasonable doubt that the defendant is guilty. [M Crim JI 5.2.]

Additionally, M Crim JI 5.11 provides as follows: "You have heard testimony from [a witness who is a police officer / witnesses who are police officers]. That testimony is to be judged by the same standards you use to evaluate the testimony of any other witness." M Crim JI 5.11. Considering that the prosecution presented more witnesses than the defense and called police officers as witnesses, M Crim JI 5.2 and M Crim JI 5.11 would have been beneficial to the defense. It appears that defense counsel recognized the benefit of M Crim JI 5.2 and M Crim JI 5.11 when he asserted that they should be provided to the jury. However, defense counsel simply failed to object when they were not. Accordingly, defense counsel's performance fell below an objective standard of reasonableness.

Nevertheless, defendant has failed to establish that he was prejudiced by defense counsel's deficient performance in this regard. Again, the prosecution presented extensive evidence that defendant was involved in the robbery including defendant's own telephone conversations and the fact that the police found the stolen items in defendant's home. Additionally, multiple witnesses who were not police officers testified that defendant was involved in the robbery. Thus, there is no indication that the jury decided this case solely based upon the number of witnesses presented by the prosecution or that the jury judged the police officers' testimony by a different standard.

## 4. M CRIM JI 3.4 AND M CRIM JI 4.11

Defendant argues that defense counsel was ineffective for failing to object to the trial court's omission of M Crim JI 3.4 and M Crim JI 4.11. We disagree. Initially, we note that defense counsel did not assert that M Crim JI 3.4 or M Crim JI 4.11 should be included in the jury instructions and did not object when they were not. Further, M Crim JI 3.4 was not applicable such that defense counsel was not ineffective for failing to raise an objection when it was omitted. M Crim JI 3.4 pertains to the impeachment of a witness with evidence of other crimes. Considering that defense counsel introduced evidence of defendant's prior convictions to bolster the veracity of his testimony in the instant matter, defendant was not impeached with evidence of his prior convictions. "[C]ounsel is not ineffective for failing to raise meritless or futile objections." *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015). Accordingly, defense counsel's performance did not fall below an objective standard of reasonableness in this regard.

Furthermore, M Crim JI 4.11 provides, in relevant part, as follows:

(1) You have heard evidence that was introduced to show that the defendant committed [a crime / crimes / improper acts] for which [he / she] is not on trial.

(2) If you believe this evidence, you must be very careful only to consider it for certain purposes. You may only think about whether this evidence tends to show:

\* \* \*

-14-

(g) *[State other proper purpose for which evidence is offered.]*

(3) You must not consider this evidence for any other purpose. For example, you must not decide that it shows that the defendant is a bad person or that [he / she] is likely to commit crimes. You must not convict the defendant here because you think [he / she] is guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find [him / her] not guilty. [M Crim JI 4.11.]

Considering that defense counsel introduced evidence regarding defendant's prior convictions and M Crim JI 4.11 limits the purposes for which a jury may consider such evidence, M Crim JI 4.11 would have been beneficial to the defense. Accordingly, defense counsel's performance fell below an objective standard of reasonableness. Nevertheless, defendant has failed to establish that he was prejudiced by defense counsel's deficient performance in this regard. Again, the prosecution presented extensive evidence of defendant's guilt that was unrelated to his prior convictions. Multiple witnesses testified regarding defendant's involvement in the robbery. Additionally, the prosecution presented evidence that defendant spoke with Strawder about the details of the robbery and the police found the stolen items in defendant's home. Lastly, defense counsel argued during closing arguments that defendant had a history of pleading guilty when he actually commits a crime such that defense counsel conveyed the purpose for which the evidence of defendant's prior convictions was to be considered. Accordingly, defendant has failed to establish that he was deprived of the effective assistance of counsel in this regard.

## E. JAIL CALLS

Defendant asserts that defense counsel was ineffective for failing to object to the admission of a compact disc containing all of defendant's jail calls without seeking redactions of the inadmissible portions of the calls. We disagree.

As an initial matter, the record does not support defendant's assertion that all of defendant's jail calls were admitted at trial. At trial, the prosecution admitted audio recordings of several jail calls contained on a compact disc. The prosecution maintains that the only jail calls admitted at trial took place on January 23, 2019, January 25, 2019, January 26, 2019, January 27, 2019, and February 9, 2019. The record reflects that the phone calls made by defendant on January 23, 2019, and January 25, 2019, were played for the jury in their entirety, and excerpts of the phone call made by defendant on February 9, 2019, were played for their jury. It is unclear from the record whether the phone calls made by defendant on January 26, 2019, and January 27, 2019, were ever played for the jury.

Defendant argues that defense counsel was ineffective for failing to object to a portion of a telephone call in which Strawder told defendant that she read a newspaper article that indicated that witnesses had seen a 35-year-old and a 17-year-old flee after the robbery occurred. We disagree. Initially, we note that Strawder made this statement during a telephone call on January 25, 2019. Further, defendants bear the burden of establishing the factual predicate for their ineffective assistance of counsel claim. *People v Jackson*, 313 Mich App 409, 432; 884 NW2d 297 (2015). On appeal, the parties dispute whether Strawder's statement was offered to prove the truth of the matter asserted or whether Strawder's statement was offered to establish that

defendant was discussing the robbery with Strawder when defendant maintained that he was not doing so. Given that defense counsel did not object to Strawder's statement, the purpose for which the statement was offered is unclear. Accordingly, defendant has failed to establish that the statement constituted hearsay such that defense counsel's performance was objectively deficient.

Next, defendant argues that defense counsel was ineffective for failing to object to a portion of a telephone call in which defendant discussed his most recent conviction of stealing and retaining a financial transaction device. We disagree. After the telephone calls were played at trial, defense counsel elicited testimony from defendant regarding defendant's prior convictions. As previously addressed, defense counsel did so for the purpose of establishing that defendant has a pattern of pleading guilty to crimes that he actually commits and to bolster the veracity of defendant's testimony regarding his innocence. This constituted sound trial strategy. Any objection to the portion of the telephone call in which defendant discussed his most recent conviction of stealing and retaining a financial transaction device would have been ineffectual because defense counsel opened the door to the admission of the evidence at a later point in the trial. Accordingly, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness in this regard.

Lastly, defendant argues that defense counsel was ineffective for failing to object to a portion of a telephone call in which Strawder stated that Colman informed her that the police arrived at defendant's home "shortly after you all ran in." We disagree. As previously addressed, it is unclear whether Strawder's statement was offered to prove the truth of the matter asserted or whether it was offered to show that defendant failed to dispute his own involvement in the crime. Defendants bear the burden of establishing the factual predicate for their ineffective assistance of counsel claim. *Id*. Given that defense counsel did not object to Strawder's statement, the purpose for which the statement was offered is unclear. Accordingly, defendant has failed to establish the factual predicate for his claim that the statement constituted hearsay such that defense counsel's performance was objectively deficient.

## F. CUMULATIVE ERROR

"The cumulative effect of a number of errors may amount to error requiring reversal." *Cooper*, 236 Mich App at 659-660. Defense counsel's errors in this matter do not amount to error requiring reversal because there is not a reasonable probability that the result of the proceedings would have been different if not for defense counsel's errors.

The deficiencies in defense counsel's performance included defense counsel's failure to object when the trial court omitted M Crim JI 7.4, M Crim JI 5.2, M Crim JI 5.11, and Crim JI 4.11. These jury instructions pertain to the prosecution's burden to prove that defendant was present when the crime occurred, the weight of police testimony, the fact that jurors should not decide the case based on which side presented more witnesses, and the purpose for which the jury may consider evidence of defendant's prior crimes.

As previously addressed, the prosecution presented evidence from multiple sources that defendant was present when the crime occurred, and the jury was instructed that the prosecution had the burden to prove each element of their case. Additionally, multiple witnesses who were not police officers testified regarding defendant's involvement in the robbery. Although the

-16-

prosecution presented more witnesses than the defense, much of the prosecution's evidence was corroborated by multiple sources. In contrast, defendant's testimony was uncorroborated. Further, the prosecution presented extensive evidence of defendant's guilt that was unrelated to his prior convictions. Lastly, defense counsel argued during closing arguments that defendant had a history of pleading guilty when he actually commits a crime such that defense counsel conveyed the purpose for which the evidence of defendant's prior convictions was to be considered. In short, defendant has failed to establish a reasonable probability that the result of the proceedings would have been different if not for the deficiencies in defense counsel's performance.

Affirmed.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood
/s/ Michelle M. Rick