*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEREK CHRISTOPHER THOMAS,

        Defendant-Appellant.

UNPUBLISHED
January 19, 2023

No. 359413
Oakland Circuit Court
LC No. 2020-274511-FC

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

PER CURIAM.

A jury convicted defendant, Derek Christopher Thomas, of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b). On appeal, Thomas argues that he was entitled to a mistrial because the prosecutor repeatedly brought up consent during trial. He also contends that his trial counsel was ineffective by failing to request a jury instruction on flight. We disagree on both points and affirm.

## I. BACKGROUND

This case arises from the August 2019 sexual assaults of Thomas's 13-year-old stepdaughter, AP. At the time, AP lived with her mother and Thomas. AP testified that Thomas sexually assaulted her on two straight days at home, and that the assaults involved Thomas penetrating her vagina and anus with his penis. The following day, AP met with her therapist and disclosed that Thomas had sexually assaulted her. AP and her therapist informed AP's mother, and AP's therapist filed a Child Protective Services (CPS) report and contacted the police.

Police officers arranged for AP to receive a criminal sexual conduct (CSC) kit and forensic examination at HAVEN, an organization that offers services for victims of sexual assault. At HAVEN, sexual assault nurse examiner Julie Carroll conducted AP's CSC kit and forensic examination. Carroll testified she was required to take down AP's medical history, conduct a head-to-toe physical assessment, photograph any areas with skin alterations or wounds, and take swabs from different parts of the body, including genitalia. Part of the medical history assessed whether AP had consensual sex with anyone in the five days before the examination to determine whether any other individual's DNA could be present in AP's body. Based on AP's responses to

-1-

questions, Carroll examined AP's labia, anus, vaginal walls, and cervix. Carroll reported there were no injuries to AP's labia, anus, or vaginal walls, but there was redness across the cervix. Carroll testified that sexual intercourse, whether consensual or nonconsensual, may produce evidence of injuries, but a lack of injuries does not prove whether penetration occurred.

Detective Michael Miller, the officer in charge, spoke with AP's mother regarding Thomas's whereabouts. Using AP's mother's phone, Detective Miller spoke with Thomas, asking him to come to the police station for an interview. Thomas expressed concern about being arrested, but Detective Miller assured him it would be a voluntary interview. Thomas did not come to the station and did not interview with police officers until several months later in January 2020. At the interview, Detective Miller asked Thomas to provide a DNA sample, and he consented. Subsequent forensic testing provided very strong support that Thomas was the contributor of the male DNA found in AP's cervical and anal swabs. The police arrested Thomas in March 2020.

At trial, Thomas denied having sexual contact of any kind with AP. Thomas argued that AP fabricated the sexual assault because she was upset that Thomas took her phone away days earlier. Unable to dispute the DNA evidence, Thomas theorized that AP took a towel he had used to clean up with after having sex with AP's mother and put it inside her vagina. Thomas also testified that he avoided contact with the police throughout the investigation not out of guilt but out of fear of returning to jail because of the false accusations.

Before closing arguments, defense counsel moved for a mistrial. Counsel argued that a mistrial was proper because the prosecutor brought up consent during its questioning of Carroll. Counsel explained that because consent was not an element of the crime charged, the prosecutor's mention of consent improperly shifted the burden to Thomas to prove consent. The prosecutor argued that consent was not brought up to shift the burden to Thomas, but to prove whether penetration caused injuries. The trial court agreed with the prosecutor and denied the motion for a mistrial. The parties then reviewed the final jury instructions with the trial court. After revising and making several corrections, both parties agreed to the instructions. As noted, the jury found Thomas guilty of two counts of CSC-I.[1] The trial court sentenced Thomas to 30 to 80 years' imprisonment for each conviction, to be served concurrently, and awarded 622 days jail credit. This appeal followed as of right.

## II. PROSECUTORIAL MISCONDUCT

Thomas argues his convictions should be reversed because the prosecutor committed misconduct by repeatedly mentioning consent during trial, and that the refusal to grant a mistrial denied Thomas his due-process right to a fair trial.

---

[1] The jury convicted Thomas of one count of CSC-I (penis into genital opening) and one of count of CSC-I (penis into anal opening). The jury acquitted Thomas of the third count of CSC-I (fellatio).

## A. STANDARDS OF REVIEW

Preserved issues of prosecutorial misconduct are reviewed de novo to determine whether a defendant was denied a fair and impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). An alleged violation of a criminal defendant's due-process rights presents a constitutional question and is also reviewed de novo. *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010). De novo review means that "we review the legal issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). A trial court's denial of a motion for a mistrial is reviewed for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *Id*.

## B. ANALYSIS

The United States Constitution and the Michigan Constitution each guarantee due process of law to criminal defendants. US Const, Am XIV; Const 1963, art 1 § 17. Implicit in this guarantee is that every criminal defendant enjoys the right to a fair trial. *People v Johnson,* 315 Mich App 163, 179; 889 NW2d 513 (2016) (citation omitted). As such, "the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. Similarly, "[a] motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017) (quotation marks and citation omitted).

Thomas stood trial on three counts of CSC-I under MCL 750.520b(1)(b)(*i*) and (*ii*). The prosecution had to prove beyond a reasonable doubt that Thomas sexually penetrated AP, that AP was at least 13 years old but less than 16 years old, and either that Thomas was a member of the same household as AP, or they shared a relationship by blood or affinity to the fourth degree. See MCL 750.520b(1)(b)(*i*) and (*ii*). Under MCL 750.520b(1)(b), the prosecutor was not required to prove a lack of consent, nor was consent available for the defendant to raise as an affirmative defense.

Thomas argues that the prosecutor's discussion of consent at trial constituted prosecutorial misconduct because it shifted the burden to him to prove consent. At trial, the prosecutor asked Carroll why she asked about AP's consensual sexual contacts before the alleged assault by Thomas. This exchange occurred in the context of Carroll explaining the method, questions, and procedures required to be followed in the completion of the CSC kit. The documents in the CSC kit required her to pose this question to AP to determine whether, on further DNA testing, there would be traces of DNA from sources other than the alleged assailant. Considering the context of this discussion, it is clear the prosecutor only referred to consensual sex because it was part of the medical records admitted during the questioning of Carroll, and relevant to the DNA evidence submitted at trial. A prosecutor's "good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70. Because the prosecutor's questions to Carroll

-3-

constituted a good-faith effort to admit relevant evidence of AP's forensic examination, this exchange does not rise to the level of prosecutorial misconduct.

Later, Carroll testified about the lack of injuries found during AP's forensic examination. The following exchange occurred:

> *Q.* Okay. And as it relates to in–injuries, in—in your experience and your expertise, can you have consensual sex or non-consensual sex that doesn't cause injuries?
>
> *A.* Yes.
>
> *Q.* And can you have consensual and non-consensual sex that does cause injuries?
>
> *A.* Yes.
>
> *Q.* Okay. So I guess so to speak, injuries aren't really indicative either way of whether someone is consensual or non-consensual; is that fair?
>
> *A.* Correct.

Defense counsel objected to this line of questioning, arguing that the exchange improperly shifted the burden to Thomas to prove consent. But the prosecutor's questioning was asked in the context of AP's lack of injuries, not to suggest the necessity of proving consent. Because proving penetration was required under MCL 750.520b, and Thomas denied having any sexual contact with AP, the prosecutor's questions were offered to show the jury that a lack of injuries did not prove a lack of penetration. The prosecutor also acknowledged having the burden of proof on the elements of the crime during closing, which the trial court reinforced by instructing the jury that "the prosecutor must prove each element of the crime beyond a reasonable doubt," and that "[d]efendant is not required to prove his innocence or to do anything." The jury instructions accurately set forth the elements of the charged offenses under MCL 750.520b(1)(b), and thus did not reference consent. Because jurors are presumed to follow jury instructions, *People v Ericksen*, 288 Mich App 192, 199; 793 NW2d 120 (2010), we presume the jurors did not consider the prosecutor's questions as shifting the burden to Thomas to prove consent. Simply put, Thomas offers no support for his contention that the jury was confused by the prosecutor's line of questioning.

Reviewing the record and statements in context, the prosecutor did not commit misconduct by referencing or eliciting testimony on consent at trial. The references were minimal, related to Carroll's explanation of her actions and findings, and did not shift the burden to Thomas to prove consent. Thomas failed to show that the mention of consent was prejudicial to his right to a fair trial. Thus, the trial court did not abuse its discretion by denying Thomas's motion for a mistrial.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Thomas next argues he was denied his right to effective assistance of counsel because defense counsel failed to request the model criminal jury instruction on flight, resulting in an improperly instructed jury.

### A. STANDARDS OF REVIEW

Generally, "[w]hether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law," with factual findings reviewed for clear error and questions of law reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). But in the absence of an evidentiary hearing, our review of ineffective assistance claims is limited to mistakes apparent from the existing record. *People v Muhammad*, 326 Mich App 40, 63; 931 NW2d 20 (2018).

### B. ANALYSIS

The Michigan and United States Constitutions require that criminal defendants receive the assistance of counsel in their defense. Const 1963, art 1, § 20; US Const Am VI. When reviewing an ineffective assistance of counsel claim, Michigan courts apply the two-pronged test adopted by the United States Supreme Court in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Pickens*, 446 Mich 298, 309, 338; 521 NW2d 797 (1994). Under this test, a defendant must establish (1) that "counsel's performance fell below an objective standard of reasonableness" and (2) that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290-291; 806 NW2d 676 (2011), citing *Strickland*, 466 US at 687-688, 694-696. For the performance prong, "a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). And to meet the prejudice standard in the trial context, the defendant must show a reasonable probability—that is, "a probability sufficient to undermine confidence in the outcome"—that the result of the trial would have been different had counsel not performed unreasonably. *Strickland*, 466 US at 694.

Thomas's argument rests on his contention that trial counsel should have requested a jury instruction on flight, and that counsel's failure to do so deprived Thomas of a properly instructed jury.[2] "A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). Thus, "[j]ury instructions must include all the elements of

---

[2] Defense counsel affirmatively approved the trial court's jury instructions without a flight instruction, and thus any underlying claim of instructional error is waived. See *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011) ("[B]y expressly . . . approving the jury instructions on the record, defendant waived any objection to the erroneous instructions, and there is no error to review."). But we "consider the jury instructions in the context of addressing [Thomas's] claim that defense counsel was ineffective for not requesting instructions" on flight. *People v Thorne*, 322 Mich App 340, 346; 912 NW2d 560 (2017).

the charged offense, and must not exclude material issues, defenses, or theories if the evidence supports them." *People v Kosik*, 303 Mich App 146, 155; 841 NW2d 906 (2013). "Failing to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013).

Thomas contends that trial counsel should have requested the trial court to instruct the jury on Michigan Criminal Jury Instruction 4.4., entitled "Flight, Concealment, Escape or Attempted Escape." This instruction states:

> (1) There has been some evidence that the defendant [tried to run away / tried to hide / ran away / hid] after [the alleged crime / (he / she) was accused of the crime / the police arrested (him / her) / the police tried to arrest (him / her)].

> (2) *This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt.*

> (3) You must decide whether the evidence is true, and, if true, whether it shows that the defendant had a guilty state of mind. [M Crim JI 4.4 (emphasis added).]

In Michigan, flight applies to actions such as "fleeing the scene of the crime, leaving the jurisdiction, running from police, resisting arrest, and attempting to escape custody." *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Evidence of flight is not alone sufficient to sustain a conviction, but it can be probative evidence indicating consciousness of guilt. *Id*.

The record shows that when police first responded to AP's home, Thomas did not flee the scene, but AP's mother removed Thomas from the home and took him to work. In August 2019, Detective Miller asked to speak with Thomas. Detective Miller told Thomas that he was not under arrest and that any conversation would be a voluntary interview, but Thomas did not come in for an interview. In January 2020, Thomas voluntarily spoke with police and provided a DNA sample. Not until March 2020, when an arrest warrant was formally issued, was Thomas required to submit himself to police custody, and police arrested him without incident. Thomas also testified that he was living at the home where the sexual assaults occurred for extended periods of time between September 2019 and his March 2020 arrest. This sequence of events calls into question whether Thomas's actions truly constitute "flight," and thus whether a request for a flight instruction would have even been granted.

Even assuming Thomas's actions constitute flight, and that a flight instruction was available, Thomas still fails to establish that defense counsel's performance was deficient. Thomas emphasizes throughout his argument that the jury instruction on flight was necessary to provide jurors with the understanding that a defendant may avoid police for innocent reasons. But the next sentence of the instruction provides that "a person may also run or hide because of a consciousness of guilt." M Crim JI 4.4. Had the flight instruction been read to the jury, the jury could have reasonably concluded that Thomas's avoidance of police showed consciousness of guilt. And because defense counsel had an active role correcting and drafting the final jury instructions, we presume that any failure to request a jury instruction on flight was part of defense counsel's trial

strategy.  See *Thorne*, 322 Mich App at 349.  Thomas has not overcome this presumption, as there was a sound and objectively reasonable basis for not requesting the flight instruction—to avoid highlighting for the jury that Thomas's flight could suggest guilt.  Consequently, Thomas cannot establish that trial counsel's failure to request a jury instruction on flight amounted to deficient performance.

        Affirmed.

                                          /s/ Noah P. Hood
                                          /s/ Thomas C. Cameron
                                          /s/ Kristina Robinson Garrett