*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. BRAUN, Minor.

UNPUBLISHED
January 19, 2023

No. 361521
Benzie Circuit Court
Family Division
LC No. 19-003079-NA

Before: PATEL, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor child, CB, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist). Respondent argues that she was denied effective assistance of counsel because her initial trial counsel failed to request reasonable accommodations for respondent's cognitive issues and mental health diagnoses and did not request a psychiatric examination. Finding no errors warranting reversal, we affirm.

## I. BACKGROUND

In October 2019, the Department of Health and Human Services (DHHS) petitioned the Benzie Circuit Court to take jurisdiction over CB.[1] The petition alleged that respondent owned several residences, but none of them had running water, heat or electricity. Consequently, respondent and CB regularly slept in respondent's vehicle because it was the only source for heat. There were concerns with personal hygiene, proper nutrition, and proper medical treatment for CB. There were also concerns for respondent's mental and physical health.

---

[1] One of respondent's other daughters, CG, was a minor when the initial petition was filed and she was included on the petition. Because CG turned 18 before the termination hearing, respondent's parental rights to CG were not terminated. CB's father is deceased.

-1-

The trial court judge read the petition[2] to respondent at the preliminary hearing, and respondent expressed that she understood the allegations. The Child Protective Services (CPS) worker testified that her investigation revealed that respondent and CB were sleeping in a car on a regular basis, respondent did not have a home with heat or water, her home only had partial electricity, and that respondent's health and erratic driving scared CB. CB reported to the CPS worker that an electrician had stated that respondent's home was hazardous to live in. There was a concern that CB would suffer injuries from either the cold or from carbon monoxide exposure due to the living conditions. At the time of the preliminary hearing, CPS had been working with respondent for approximately a year to find appropriate housing following a house fire, but it remained an ongoing issue. Respondent had also refused attempts to address concerns about her mental health. Respondent pled responsible to the allegation that she was neglecting CB because she owned several residences, but none had running water, heat, or electricity and were otherwise not appropriate to live in. In December 2019, respondent's supervised parenting time was suspended based on allegations that the visits were causing CB extreme trauma.

Respondent underwent a psychological evaluation with Wayne Simmons, Ph.D. in November 2019. Respondent self-reported that she graduated from high school, and has always been actively employed. She denied any emotional distress or depression. She reported that her concentration, memory, and attention were fine. Dr. Simmons determined that respondent was "functioning in the low average range of intelligence," but "appears to function higher than [her verbal IQ] score would indicate." Dr. Simmons opined that respondent did not process incoming information as effectively as others, but she had "a good ability to form accurate impressions of herself and others and to anticipate the consequences of her actions." He also determined that respondent had "the intellectual capability" and understood the basic "rudimentary properties of parenting." He further opined that respondent could think logically and coherently, and there was no indication that she suffered from a psychotic condition. Dr. Simmons concluded that respondent was a difficult individual to treat because she believed all of her issues were external, as opposed to internal. As a result, he was unable to recommend any specific services for respondent.[3] He opined that respondent was not likely to change because she was not willing to accept responsibility for her actions or acknowledge any distress.

Because there were concerns that respondent may have suffered a traumatic brain injury in a prior automobile accident, the DHHS referred respondent for a neurological evaluation, which was performed in January 2021 by Michael Wolff, PsyD, ABPdN. During the evaluation, respondent denied a history of psychiatric or mental health concerns, denied requiring a special education, and self-reported that she was an honor roll student with primarily A's and B's in school. Dr. Wolff diagnosed respondent as borderline intellectual functioning, but he was clear that she did not have a mild intellectual disability. He found that her ability to recall a list of words was very normal for her age. He determined that respondent was able to learn new information,

---

[2] DHHS amended the petition to request that the children be removed from respondent's care and custody.

[3] Dr. Simmons also evaluated CB. He did not think parenting time with respondent and CB would be appropriate. He recommended that respondent's parental rights be terminated based on the living conditions, and respondent's refusal to take initiative to resolve her issues.

but did better when information was broken down for her, repeated, or she was provided an example. He concluded that respondent had "effective functional communication" and "demonstrated the ability to get by for herself[.]" Based on the data, Dr. Wolff did not believe that respondent had suffered a traumatic brain injury. Dr. Wolff opined that respondent would not be able to effectively parent her children within a reasonable time. Although Dr. Wolff opined that respondent could benefit from support services, he noted that she had refused to meaningfully participate in the services He opined that a psychiatric consultation "may be useful," but acknowledged that she was not likely to comply with any medications for psychotropic needs. He also opined that case management could be beneficial if respondent was cooperative, but stated he did not believe that she would be cooperative. Dr. Wolff opined that termination of respondent's parental rights would be beneficial and provide CB with stability.

During this case, respondent was given case service plans and provided with numerous services. DHHS offered respondent various services and referrals to address the barriers to reunification, which included housing, emotional stability, and parenting skills. At times, respondent demonstrated periods of progress with the case service plan. For example, respondent utilized available resources to maintain safe and appropriate living conditions in her home for nearly a year, she completed a parenting skills course, she participated in mental health counseling, and she engaged in services provided by Wellsprings Lutheran Services. Ultimately, however, her participation in services remained inconsistent. Respondent was discharged from mental health counseling and from the program at Wellsprings Lutheran Services due to her lack of participation and progress. And her housing situation declined to unsafe and unsuitable living conditions.

The DHHS petitioned for termination in January 2022, and the trial court held a two-day termination hearing on March 18, 2022 and April 15, 2022, which was nearly 2 1/2 years after the dispositional phase began.[4] Following the hearing , the trial court found that clear and convincing evidence supported terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*), and that termination was in CB's best interests.[5] The trial court reasoned that there were attempts to correct the housing issue and services were provided by DHHS, but the evidence and testimony established that the housing situation was the same as it was two years earlier. The trial court further concluded that respondent's emotional stability had not improved since disposition. The trial court found that respondent was inconsistent with counseling, made minimal progress with the services offered by Wellsprings Lutheran Services, and her parenting skills were questionable. Respondent now appeals as of right.

---

[4] In August 2021, respondent's counsel moved to withdraw due to a breakdown in the attorney-client relationship, which the trial court granted. New counsel was immediately appointed to represent respondent.

[5] Although not argued on appeal, we note that the trial court properly found that at least one statutory ground was met and that termination was in CB's best interests. See *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent argues that her initial trial counsel was ineffective because she failed to request reasonable accommodations under the under the American with Disabilities Act (ADA) for her alleged cognitive and mental health disabilities. We disagree.

### A. STANDARD OF REVIEW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review a trial court's factual findings, if any, for clear error, and the constitutional issue is reviewed de novo. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). Because this issue was not raised below and an evidentiary hearing was not requested, the issue is not preserved. We review unpreserved issues for plain error affecting the party's substantial rights. *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citations omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citations omitted). When, as in this case, an evidentiary hearing has not been held, our review is limited to mistakes apparent from the record. *People v Thorne*, 322 Mich App 340; 912 NW2d 560 (2017).

### B. ANALYSIS

Before seeking termination of an individual's parental rights, the DHHS must first make reasonable efforts to reunify the family. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). This includes "creat[ing] a service plan outlining the steps that both [DHHS] and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86, citing MCL 712A.18f(3)(d). And specifically concerning parents with disabilities, "efforts at reunification cannot be reasonable under the Probate Code if [DHHS] has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *Id*. at 86. The DHHS "cannot accommodate a disability of which it is unaware." *Id*. at 87. But it is obligated to provide reasonable accommodations under the ADA to "a parent with *a known or suspected* intellectual, cognitive, or developmental impairment." *In re Sanborn*, 337 Mich App at 263 (quotation marks and citation omitted).

Termination of parental rights is premature if the DHHS has not made reasonable efforts toward reunification. See *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010); see also *In re Newman*, 189 Mich App 61, 66-70; 472 NW2d 38 (1991) (concluding that termination was improper when the respondents required assistance to learn how to maintain their home suitable for habitation by the children, but they did not receive that assistance). Although the DHHS must "expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). When challenging the reasonableness of the services offered, "a respondent must establish that he or she would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App at 264.

Respondent argues that her attorney should have asked for reasonable accommodations for her cognitive issues, such as reading documents out loud to her and checking in with respondent more frequently to summarize her understanding of the expectations. But the record does not support that respondent suffers from an intellectual disability that required reasonable accommodations under the ADA. Regardless, the record reflects that the DHHS's foster care case worker reviewed the case service plan (CSP) and parent agency treatment plan (PATP) directly with respondent prior to the November 2019 hearing, and respondent signed the documents acknowledging receipt of them. Moreover, respondent was present when the foster care case worker testified at length regarding the CSP, PATP, and respondent's goals. In fact, respondent expressed to her attorney that she had no issues with completing the services outlined in the CSP, and requested that the CSP be adopted. The record further reflects that the CSP and PATP were explained out loud to respondent, and she acknowledged that she understood the goals and expectations. There is no basis in the record to conclude that she would have benefitted from additional efforts from the DHHS. See *In re Sanborn*, 337 Mich App 252 at 264.

Respondent also argues that her attorney was ineffective for failing to request reasonable accommodations for her mental health diagnoses. But the mental health professionals all concluded that she was a poor candidate for counseling and other interventions. Respondent participated in counseling for several months. But she made minimal progress and failed to show for more than twenty appointments. There is no basis in the record to conclude that she would have benefitted from additional efforts from the DHHS. See *In re Sanborn*, 337 Mich App 252 at 264.

The record reflects that respondent utilized the resources and services provided by the DHHS to rectify her living conditions and maintain suitable housing and transportation for nearly a year. She also completed a parenting skills course, attended individual therapy, and participated in Wellsprings Lutheran Family Support services. This demonstrates that respondent understood the goals and expectations for reunification and how to implement them. Unfortunately, respondent's participation in services remained inconsistent, and she repeatedly declined additional services offered by the DHHS to assist her in maintaining suitable housing. She also stopped discussing her progress with her foster care case worker. The record reflects that respondent refused to return the foster care case worker's calls on several occasions, refused to participate in family team meetings, and refused to allow in-home visits after November 2020. Her failure to accomplish the reunification goals was not due to a cognitive or mental health disability, but due to her refusal to continue to participate in services. Respondent fails to adequately explain how the DHHS could have better accommodated her cognitive issues or mental health diagnoses. She also does not establish that she would have fared better had additional efforts been made.

Absent evidence of a reasonable accommodation that could have been provided to respondent or some evidence that the services that were provided were inappropriate, any objection to the CSP or PATP, or request for additional services, would have been futile. Respondent's counsel cannot be considered ineffective for failing to make a futile objection. See *Ericksen*, 288 Mich App at 201. At most, respondent's counsel should have perhaps requested a psychiatric evaluation as suggested by Dr. Wolff. But Dr. Wolff conceded that such an evaluation would be futile because respondent would not likely be compliant with medications. Even if counsel acted unreasonably by not requesting a psychiatric evaluation, respondent cannot establish prejudice.

See *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). Respondent did not seek an evidentiary hearing on her ineffective assistance claim, and the existing record does not support that a psychiatric evaluation would have led to recommendations for accommodations with which she would have fared better. See *In re Sanborn*, 337 Mich App at 264-266. This Court cannot simply speculate that reasonable accommodations were denied to respondent or that she would have fared better with different services. See *id*. On this record, respondent cannot show she was prejudiced by her counsel's failure to raise an ADA claim in the trial court.

Affirmed.

/s/ Sima G. Patel
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro