# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KERRI LYNN THORNE,

        Defendant-Appellant.

FOR PUBLICATION
December 14, 2017
9:05 a.m.

No.  335262
Emmet Circuit Court
LC No.  16-004361-FH

Before:  MARKEY, P.J., and HOEKSTRA and RONAYNE KRAUSE, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right from her conviction of larceny in a building, MCL 750.360.  For the reasons explained in this opinion, we affirm.

On April 12, 2016, defendant and the victim were playing slot machines next to each other at the Odawa Casino in Petoskey, Michigan.  When the victim left her slot machine to use the restroom, defendant took the victim's TITO[1] ticket (hereafter, "TITO") out of the slot machine that the victim had been playing.  While the victim was on her way to the restroom, she realized that she had not retrieved her TITO.  The victim returned to the slot machine and asked defendant if she had seen the ticket, and defendant responded that she had not.

The victim reported the missing TITO to a security guard.  Video footage from the casino showed defendant taking the TITO ticket, and a police officer was called to investigate the incident.  When speaking to the police, defendant initially denied that she had taken the TITO, but she then admitted doing so after the officer informed defendant of the surveillance footage.

At trial, defendant did not dispute having taken the TITO; rather, she testified that she believed that the TITO had been abandoned.  According to defendant, her belief was rooted in her prior experiences, having discussed it with casino staff, and based on one instance in which

---

[1]TITO means "ticket in and ticket out."  The slot machines produce a TITO with the player's present credit value upon conclusion of play.  A player may either exchange the ticket for cash or use it in another machine to play more games.

staff prevented her from retrieving her own TITO after she momentarily left her slot machine. A jury convicted defendant of larceny in a building. Defendant now appeals as of right.

## I. PROPERTY "OF ANOTHER"

Defendant first argues that she did not commit a larceny because the TITO was not the property "of another." Specifically, defendant maintains that the victim did not have the right to possess the TITO as against defendant because the victim abandoned or, at a minimum, "lost" the TITO. Because the TITO was lost or abandoned, defendant maintains that she—"or anyone else that sat down at that slot machine and played"—had the right to possess the TITO.

Questions of statutory interpretation and issues relating to the sufficiency of the evidence are reviewed de novo. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). Defendant was convicted of larceny in a building under MCL 750.360. Because the statute does not define the term "larceny," it is afforded its common law meaning. *People v March*, 499 Mich 389, 399; 886 NW2d 396 (2016). Based on the common law understanding of larceny, the elements of larceny in a building are: (1) a trespassory taking (2) within the confines of a building and (3) the carrying away (4) of the personal property (5) of another (6) with intent to steal that property. *Id.* at 401-402. Defendant's argument implicates the "of another" element.

For purposes of the "of another" requirement, "possession, and not title ownership is the determinative requirement in larceny crimes." *Id.* at 408. Specifically, property "of another" "is any property in which 'another' individual holds the right to possess as against the defendant at the time of the taking." *Id.* at 414. Conversely, "if the defendant had the right to possess the property as against the complainant at the time of the taking, no larceny could occur." *Id.* at 403.

> To determine whether "another" had . . . rightful possession, courts must examine the respective rights to the property. This examination requires courts to determine both the rights of all relevant individuals to the property and whether any of those individuals held a right to possess the property as against the defendant. To undertake this examination, courts should consult pertinent statutes, ordinances, contracts, caselaw, and the like that give rise to the individuals' rights and define the relationship between those rights . . . . [*Id.*]

In this case, the victim using the slot machine had actual possession of the TITO until she walked away from the machine. According to the victim's testimony, as she walked to the bathroom, she realized that she had left her ticket behind and, when the victim saw her daughter-in-law, she told her that she had "lost" the ticket. But, within 4 minutes, the victim returned to the slot machine with her daughter-in-law to look for the ticket. The mere fact that the victim momentarily walked away from the machine does not establish that the victim gave up possession of the TITO. That is, possession can be either actual or constructive, and it can be concluded from the evidence that the victim retained the power and intention to exercise dominion or control over the TITO. *Id.* at 415. Moreover, insofar as defendant emphasizes the victim's characterization of the TITO as "lost," as between the owner of lost property and the individual who finds the item, the owner of the property has the right to possession of the item. See MCL 434.22(1); MCL 434.24; *Wood v Pierson*, 45 Mich 313, 317; 7 NW 888 (1881). Indeed, the finder of lost or misplaced property can be guilty of larceny when he or she takes

-2-

found property with the intent to steal. See *People v Harmon*, 217 Mich 11, 13, 18; 185 NW 679 (1921); see also 50 Am Jur 2d Larceny § 52. In short, while defendant claims that the TITO was abandoned, the evidence supports the conclusion that the victim momentarily walked away from the TITO without relinquishing constructive possession or that she, at most, lost the TITO; and, this evidence that defendant took lost or mislaid property was sufficient to support the conclusion that, when defendant took the TITO, the TITO was property "of another" within the meaning of MCL 750.360.[2]

## II. JURY INSTRUCTIONS ON ABANDONED PROPERTY

Defendant next argues that the trial court erred by failing to give a specific instruction on abandoned property or that, alternatively, her trial counsel's failure to request an abandoned property instruction amounted to ineffective assistance of counsel. We first note that defendant waived review of the jury instructions because her counsel clearly expressed satisfaction with the trial court's instructions. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). However, we will consider the jury instructions in the context of addressing defendant's claim that defense counsel was ineffective for not requesting instructions on abandoned property. See *People v Eisen*, 296 Mich App 326, 329-330; 820 NW2d 229 (2012).

Defendant preserved her claim of ineffective assistance of counsel by raising it in a motion for a new trial. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. This Court reviews the trial court's factual findings for clear error and reviews questions of law de novo. *People v Lane*, 308 Mich App 38, 67-68; 862 NW2d 446 (2014). When, as in this case, an evidentiary hearing has not been held, our review is limited to mistakes apparent from the record. *Id.* at 68.

To establish ineffective assistance of counsel, defendant "must establish (1) the performance of [her] counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "Failing to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013).

---

[2] On appeal, defendant also argues that the TITO may have been owned or possessed by the casino once the victim walked away from the slot machine. We fail to see how this argument aids defendant because property belonging to, or in the possession of, the casino would still be property "of another." See generally *People v Hatch*, 156 Mich App 265, 268; 401 NW2d 344 (1986).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against [her]." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (quotation marks and citation omitted). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *Riddle*, 467 Mich at 124.

In this case, defendant contends that counsel should have requested an instruction on abandoned property. The "abandonment" of property refers to "the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his or her ownership, possession, and control, and without vesting ownership in any other person." 1 C.J.S. Abandonment § 1. See also *Roebuck v Mecosta Co Rd Comm*, 59 Mich App 128, 132; 229 NW2d 343 (1975). "Abandoned property belongs to no one," and "[t]he first person to take possession acquires ownership." 3 Wharton's Criminal Law § 377 (15th ed.). "Therefore, abandoned property cannot be the subject of larceny." *Id.* See also 50 Am Jur 2d Larceny § 52. Moreover, because larceny is a specific intent crime, an individual who claims a right to property, even if that claim is mistaken or unfounded, has not committed larceny, provided that the individual honestly believed he or she had a claim to the property. See *People v Holcomb*, 395 Mich 326, 333; 235 NW2d 343 (1975); *People v Hillhouse*, 80 Mich 580, 586; 45 NW 484 (1890); M Crim JI 7.5. For this reason, if an individual "truly believed" property to be "abandoned or unwanted," this honest belief, even if mistaken, can constitute a defense to a specific intent crime. *Morissette v United States*, 342 US 246, 271, 276; 72 S Ct 240; 96 L Ed 288 (1952). See also *Hawkins v United States*, 103 A3d 199, 201 (DC 2014); *Commonwealth v Liebenow*, 470 Mass 151, 156-158; 20 NE3d 242 (2014).

At trial, defendant testified that she thought the TITO ticket was "abandoned" when the victim walked away from the slot machine and she specified that she held this belief because of her past experiences in the casino. Arguably, given this testimony, defense counsel could have sought an instruction regarding abandoned property. However, counsel's actions are presumed to be sound trial strategy, and defendant has not overcome the presumption that counsel's decisions regarding the jury instructions were a matter of trial strategy, particularly when, as discussed below, the instructions on the elements of larceny under M Crim JI 23.4 were sufficient to protect defendant's rights. See *People v Meissner*, 294 Mich App 438, 458, 460; 812 NW2d 37 (2011).

Moreover, even assuming counsel could, or should, have requested a specific instruction on abandonment, we are not persuaded that defendant is entitled to relief on appeal. Counsel's failure to request an instruction on abandonment did not prevent defendant from presenting a substantial defense. To the contrary, even absent a specific jury instruction, defendant testified to her belief that the property was abandoned and, in closing arguments, defense counsel argued that defendant did not intend to take property belonging to anyone else because, at the time she took the TITO, she did not think it belonged to the victim. Further, the jury instructions given did not prevent the jury from returning a not guilty verdict if they believed defendant's version of

events.[3] The instructions given on the elements of larceny in a building, which were consistent with M Crim JI 23.4, required the jury to find that defendant took "someone else's property" and that "at the time the property was taken, the Defendant intended to permanently deprive the owner of the property." Had the jury believed that the TITO was abandoned or had the jury determined that defendant honestly believed that the TITO was abandoned, they would not have concluded that she took "someone else's property" or that when she did so she "intended to permanently deprive the owner of the property."

Additionally, despite defendant's claim that she believed that the TITO was abandoned, we note that there was strong evidence that this was not her honest belief. Unlike the "spent casings left in the hinterland to rust away" like unwanted junk in *Morissette*, 342 US at 276, the TITO ticket had a value of $40, it was being used by the victim in the moments before the taking, defendant saw the victim walk away from the slot machine, and defendant took the TITO within 30 seconds after the victim walked away. On these facts, its strains credulity to suggest that defendant honestly believed that the victim intended to relinquish all rights to the TITO. This is particularly true given evidence that the victim returned and asked defendant about the TITO within 4 minutes of walking away, but defendant denied seeing the ticket. Likewise, when defendant was first confronted by authorities about taking the TITO, rather than claim that she simply picked up abandoned property, she said that she did not take the TITO. These lies to the victim and the authorities are indicative of a consciousness of guilt. See *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008). Overall, even assuming that counsel should have requested a specific instruction on abandonment, given the instructions under M Crim JI 23.4 and the strong evidence of defendant's guilt, defendant has not established that she was prejudiced by counsel's failure to request an abandoned property instruction and she is not entitled to relief on appeal.

## III. CONSTITUTIONAL RIGHT TO TESTIFY

Finally, defendant claims that she was deprived of her constitutional right to testify when the trial court sustained a relevancy objection during her testimony. In particular, during defendant's testimony, defense counsel asked her whether she was familiar with the casino's practices regarding a "bowl of tickets." The prosecutor objected based on relevancy, and the trial court sustained the objection. Defendant now claims that this ruling deprived her of the right to testify in her own defense and to offer exculpatory evidence that would have revealed that TITOs are commonly abandoned at the casino.

---

[3] Defendant relies heavily on *Morissette*, wherein the Court determined that an honest belief that property was abandoned negated the specific intent required to convert property and the Court reversed the defendant's conviction based on improper jury instructions on intent. *Morissette*, 342 US at 271, 276. However, *Morissette* is easily distinguished because in that case the trial court affirmatively instructed the jury that "it is no defense to claim that [the property] was abandoned." *Id.* at 249. While the present case lacked a specific instruction on abandoned property, the general instructions on larceny in a building allowed defendant to present her claim that she believed the TITO had been abandoned.

"A defendant's right to testify in [her] own defense stems from the Fifth, Sixth, and Fourteenth amendments of the United States Constitution." *People v Boyd*, 470 Mich 363, 373; 682 NW2d 459 (2004). "Any ruling, even if on a mere evidentiary issue, necessarily affects a defendant's constitutional rights if it has a chilling effect on the exercise of the right to testify." *Id*. at 374. However, the right is not absolute, and a defendant remains subject to the "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

At the outset, we note that this is not a case where the trial court prevented defendant from taking the stand. Cf. *People v Solomon*, 220 Mich App 527, 535; 560 NW2d 651 (1996). Instead, this is a case in which the trial court sustained an objection to a specific line of questioning relating to a "bowl of tickets" at the casino. Defendant did not make an offer of proof at trial, MRE 103(a)(2), and thus it is unclear what testimony defendant intended to offer about a "bowl of tickets" at the casino or how this bowl related to the taking of the victim's TITO, which was left in a slot machine. If we were to accept defendant's assertion on appeal that the bowl of TITOs was evidence that TITOs are commonly abandoned in the casino, this evidence might have some relevance to defendant's intent and whether she honestly believed that the victim abandoned her TITO by momentarily walking away from the machine. See MRE 401.

However, even assuming that this testimony was relevant, the exclusion of this testimony did not prevent defendant from testifying on her own behalf and any error in excluding this testimony was harmless. See *Solomon*, 220 Mich App at 535. That is, the exclusion of evidence relating to a "bowl of tickets," did not prevent defendant from asserting that she believed the victim's TITO had been abandoned or from asserting that she held this belief based on casino customs. Cf. *Alicea v Gagnon*, 675 F2d 913, 925 (CA 7 1982). For instance, defendant testified that she had "no idea" she was stealing because she had talked with "security supervisors, slot attendants, about slips that have been left over, whether it be fifteen cents or $15.00, and they considered it abandoned, and that was my line of thinking." More specifically, defendant testified that two weeks prior to this incident, she had been playing a slot machine, she left the machine for a few moments, and when she returned to the machine, casino staff denied her receipt of her winnings because she had abandoned her machine. In short, the exclusion of evidence relating to a bowl of TITOs did not prevent defendant from testifying on her own behalf to her understanding of the casino's practice of deeming TITOs "abandoned" if a machine was left unattended. Moreover, as discussed *supra*, given the $40 value of the ticket, the fact that defendant took the TITO within 30 seconds of watching the victim walk away, and the lies defendant told when first asked about the TITO, there was strong evidence that she did not honestly believe that the victim's TITO was abandoned. Overall, because defendant was able to present her abandonment defense, any potential error in the exclusion of her testimony relating to a "bowl of tickets" was harmless, particularly in light of the strong evidence of defendant's guilt. See *id.* at 925-926; *Solomon*, 220 Mich App at 535.

Affirmed.

/s/ Jane E. Markey
/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause