*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROY DEWAYNE PALMER,

        Defendant-Appellant.

UNPUBLISHED
March 16, 2023

No. 355426
Hillsdale Circuit Court
LC No. 20-444744-FC

Before: M. J. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and two counts of second-degree CSC (CSC-II), MCL 750.520c(2)(b). He was sentenced to 37 to 60 years' imprisonment for each CSC-I conviction and 16 to 24 years' imprisonment for each CSC-II conviction. We affirm.

## I. FACTUAL BACKGROUND

Defendant was a friend of Kenneth Kenaiou for more than 20 years. Although they lost touch for many years, they reconnected in August 2019. Soon thereafter, defendant, then aged 40, asked Kenaiou for a place to stay, and Kenaiou allowed defendant to stay with him and sleep on the couch at his apartment. The victim, Kenaiou's then 12-year-old daughter, CK, had been living in Kentucky for the summer, but returned to Kenaiou's apartment in September 2019, shortly after defendant moved in.

CK described her initial feelings toward defendant as looking to him as like an "uncle" or "godfather." In time, however, her feelings evolved, and she liked him more "like a boyfriend." CK told defendant about these feelings, but did not feel that defendant took her seriously. CK began engaging in behaviors she hoped would draw defendant's attention. Both she and her father testified that she would "play around" by "tapping" or "smacking" defendant. Both Kenaiou and defendant would tell CK to stop, but Kenaiou witnessed defendant respond in kind occasionally. CK testified that when she escalated her attention-seeking behaviors, defendant did not respond at first, but he began showing interest when he was drinking.

-1-

CK testified about an occasion when defendant touched her breasts over her clothing after defendant asked her whether she would "tell on him" to her parents. CK further testified that defendant touched her vagina under her clothes, and that she saw his penis on three occasions. On one occasion, defendant asked her to perform oral sex, telling her that if she wanted to be his "true girlfriend" she would do so. CK agreed because she wanted to be his "true girlfriend," and defendant ejaculated in her mouth. CK testified that, on another occasion, she and defendant engaged in sexual intercourse.

CK eventually told friends at school about her encounters with defendant. Her friends told the school counselor, Erin Smith, who contacted the Department of Health and Human Services and Kenaiou. Kenaiou and CK went to the Jonesville Police Department to report the sexual abuse, and the police chief, Michael Lance, interviewed them. Chief Lance also interviewed CK at school with Smith present, and he attended CK's forensic interview at the Child Advocacy Center. Defendant denied having any sexual contact with CK.

The jury found defendant guilty on all counts. After sentencing, defendant moved for a new trial, arguing that the trial court abused its discretion by not reopening the proofs after Facebook messages came to light that appeared to contradict Kenaiou's testimony about an admission by defendant. Defendant also argued that his trial counsel provided ineffective assistance by failing to object to Chief Lance's testimony about children and their conceptualization of time and other details on the ground that he lacked the proper expertise, and to Smith's testimony on the ground that it vouched for CK's credibility. The prosecution countered that the purportedly newly discovered evidence was not actually newly discovered because defendant and his girlfriend knew about the messages months earlier, and the belated objections to the testimony by Chief Lance and Smith were inapt. The trial court denied defendant's motion. This appeal followed.

## II. REOPENING THE PROOFS

Defendant, through appellate counsel, first argues that the trial court abused its discretion by not reopening the proofs after his counsel was informed about Facebook messages that allegedly undermined Kenaiou's testimony.

We review decisions on motions to reopen proofs for an abuse of discretion. *People v Herndon*, 246 Mich App 371, 419; 633 NW2d 376 (2001). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *People v Rogers*, 338 Mich App 312, 320; 979 NW2d 747 (2021). "Relevant in ruling on a motion to reopen proofs is whether any undue advantage would be taken by the moving party and whether there is any showing of surprise or prejudice to the nonmoving party." *Herndon*, 246 Mich App at 420 (quotation marks and citation omitted). Other relevant considerations include a change of conditions, the timing of the motion, and whether the moving party wishes to present newly discovered, material evidence. *People v Moore*, 164 Mich App 378, 383; 417 NW2d 508 (1987), modified in part and remanded on other grounds 433 Mich 851 (1989).

Kenaiou testified at trial that he confronted defendant by telephone, asking whether the allegations were true, and defendant responded, "sure, who wouldn't accept a free blowjob?"

Defendant denied telling Kenaiou that he had had oral sex with CK, explaining that he did not even have his phone at the relevant time because he had left it at Kenaiou's apartment.

The parties rested at the end of the first day of trial. At the beginning of the second day, defense counsel sought to reopen proofs because of purportedly new evidence that undermined Kenaiou's testimony that he had confronted defendant by phone and that defendant admitted to the sexual contact with CK. Defense counsel explained that she had been given copies of Facebook messages between Kenaiou and defendant's girlfriend in which Kenaiou appeared to admit that he had heard from third parties that defendant made the "free blowjob" remarks about CK, and not, as he testified, directly from defendant during a phone call. It is undisputed that defense counsel had no knowledge of these messages until defendant brought their potential existence to her attention after the parties rested. Defendant and his girlfriend apparently knew about them for months, but did not say anything to defense counsel because they were not sure the messages were still accessible. The trial court inquired about whether Kenaiou was available to return to court, but upon finding out that he was not available, the court opted to proceed to closing arguments and the verdict.

Here, several factors support the trial court's decision to deny defendant's request to reopen the proofs. Defendant, despite knowing about the Facebook messages, and hearing Kenaiou's trial testimony, waited until after the close of proofs to notify his attorney about the messages. The evidence defendant wished to present was not, in fact, newly discovered, but instead was simply delayed by defendant's own lack of due diligence. Further, the evidence would presumably have been a surprise for the prosecution, with the late disclosure hampering any efforts to investigate. Thus, the trial court did not abuse its discretion by denying defendant's request to reopen the proofs.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant, through appellate counsel, next argues that his trial counsel provided ineffective assistance of counsel for failing to object to certain portions of Chief Lance's and the school counselor Smith's respective testimonies.

Defendant preserved this claim of ineffective assistance of counsel by raising it in his motion for a new trial. *People v Thorne*, 322 Mich App 340, 346-347; 912 NW2d 560 (2017). Claims of ineffective assistance of counsel present a mixed question of fact and law. *Id.* at 347. "A judge must first find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id.* (quotation marks and citations omitted). The trial court's findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id.* However, when, as in this case, no evidentiary hearing was held, this Court's review is limited to mistakes apparent from the record. *Id.* To succeed on a claim of ineffective assistance of counsel, "[a] defendant must first show that defense counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009) (quotation marks and citations omitted). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Under MRE 701, lay witnesses may testify with respect to opinions and inferences that are reasonably based on the witness's perception and that can be helpful to understanding that witness's testimony, whereas MRE 702 allows for properly qualified expert witnesses with scientific, technical, or specialized knowledge to testify about matters that are not necessarily easily within the grasp of the average fact-finder. *People v McLaughlin*, 258 Mich App 635, 657-658; 672 NW2d 860 (2003).

Defendant argues that Chief Lance's testimony about how CK's inconsistent statements could be explained by the tendency children often have to confuse details such as their perceptions of time constituted expert testimony for which he was not properly qualified. Chief Lance interviewed Kenaiou and CK at the police station, he interviewed CK at school with Smith, and he attended CK's forensic interview. Chief Lance testified that CK's trial testimony was not entirely consistent with what she said during interviews, but that it is common for children to not correctly remember details such as the timing of events. However, Chief Lance was not testifying as an expert, but rather as a fact witness recounting what happened during the interviews with CK. That children often confuse details of events when attempting to recount them, or frequently have different perceptions of time, is not specialized knowledge that a jury needs expert testimony to understand, or that a witness needs specialized knowledge or experience to testify about. Rather, such understandings should be within the grasp of nearly anyone who has had any extended interactions with children. CK explained inconsistencies in her accounts of these incidents by admitting that she omitted details when authorities interviewed her in hopes of keeping defendant out of trouble. Chief Lance described his extensive law-enforcement experience, including service as a school-resource officer, and his many investigations involving interviewing children. His testimony was not specialized, but rather proper lay-witness testimony, and thus any objection by defense counsel would have been futile. *Ericksen*, 288 Mich App at 201.

When Smith was asked, "based on your training and experience and your observations from your counseling, did you observe anything that would lead you to believe that [CK] could have developed this perception of the relationship on her own?", she answered in the negative. Defendant argues that this testimony vouched for CK's credibility. "It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). But a reasonable inference to be drawn from this testimony was not that Smith was affirming the truthfulness of it, but rather simply stating that, on the basis of her experiences, she doubted that CK developed the thoughts, feelings, and perceptions of her relationship with defendant entirely on her own. Because these witnesses gave proper testimony, any objections would have been futile, and thus defendant's trial counsel was not ineffective for failing to raise such objections. *Ericksen*, 288 Mich App at 201.

IV. CUMULATIVE ERROR

Finally, appellate counsel argues that the cumulative effect of the asserted errors warrants reversal. The cumulative effect of errors that are not serious enough individually to warrant reversal can indeed combine to constitute error requiring reversal; that cannot be the case where no errors are established. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999). Because we have concluded that there were no errors with respect to the issues appellate counsel raises on appeal, there is no basis for reversal for cumulative error.

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant, in his Standard 4 brief, argues that his trial counsel was ineffective for not arguing for leniency during sentencing. This issue is unpreserved because it was not raised in defendant's motion for a new trial or evidentiary hearing. *Thorne*, 322 Mich App at 346-347. Thus, our review is limited to mistakes apparent on the record. *Id*. at 347.

Nothing in the record suggests that the trial court would have been amenable to pleas for leniency—indeed, the record suggests quite the opposite. At sentencing, the trial court stated that, "if one was inclined, there are numerous reasons for departure" from the sentencing guidelines, but ultimately imposed sentences within the guidelines. The trial court recounted at great length defendant's criminal history, and described his actions underlying this case as "reprehensible." The trial court further opined that the public would best be served by removing defendant from it, and it emphasized that it was exercising its discretion under the habitual-offender statute, MCL 769.12. For these reasons, defense counsel's alleged failure to plead for leniency on defendant's behalf did not constitute ineffective assistance of counsel because there is no indication on the record that such pleas would have had any impact on defendant's sentences.

Lastly, defendant argues in his Standard 4 brief that defense counsel was ineffective for failing to investigate or play at trial the recording of CK's forensic interview, for failing to investigate whether CK had a sexually transmitted infection that defendant allegedly had, and for improperly advising defendant that he could not be convicted of CSC-I without physical evidence. Defendant did not raise these issues in his motion for new trial or for an evidentiary hearing. Failure to raise an issue of ineffective assistance of counsel in a motion for a new trial or an evidentiary hearing typically precludes review of that claim unless the record is sufficient to support it. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). The record here does not support these claims, and thus we need not consider the merits.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron