*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re PATTON/SHEPHERD, Minors.

UNPUBLISHED
October 19, 2023

No. 365595
Muskegon Circuit Court
Family Division
LC No. 2010-040178-NA

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Respondent-mother appeals of right the trial-court order terminating her parental rights to her three minor children pursuant to MCL 712A.19b(3)(b)(*i*) (conditions of adjudication continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care and custody), MCL 712A.19b(3)(j) (child will be harmed if returned to the parent), and MCL 712A.19b(3)(k) (respondent abused the child or a sibling of the child). Respondent contends that she was denied the effective assistance of counsel and that the trial court clearly erred by finding that termination of respondent's parental rights was in the children's best interests. We affirm.

## I. FACTUAL BACKGROUND

Respondent is the mother of three minor children, KMS, KNS, and IP. On May 15, 2020, law-enforcement officers were dispatched to respondent's home after receiving a call about a half-naked woman in the street with a baby. The officers arrived at the scene to find respondent in the street naked from the waist down crushing KMS's skull against respondent's chest and the other two children standing nearby to witness the violence. Respondent was making statements that the baby "needed to go to heaven," and respondent was trying to suffocate the baby to accomplish that result. Both KMS and respondent were transported to the hospital, where it was determined that KMS's skull had been cracked. This was only hours after respondent had stabbed her boyfriend, who is the father of KMS and KNS, in front of the children and caused him to flee for help.

The children were removed from the home and placed with their maternal grandmother in hopes of establishing a guardianship. Children's Protective Services (CPS) moved for termination of mother's parental rights "due to the egregious act and the injuries sustained by the child and the trauma that was caused to the other child[ren] in the home." A termination hearing was scheduled for September 13, 2022, but respondent's attorney moved to adjourn that hearing to allow for the

-1-

completion of respondent's mental-health evaluation. Petitioner objected to that adjournment, but the trial court granted respondent's counsel's motion, so the termination hearing did not resume for months while the report of the evaluation was completed.

On March 2, 2023, a continued termination hearing took place. Respondent's trial counsel argued that respondent had engaged in an isolated, one-time incident, and even though there were grounds to terminate respondent's parental rights, the trial court should not do so. Respondent did acknowledge her behavior was the product of self-inflicted consumption of alcohol and marijuana on the night of the incident. Although the incident may have been out of character because of the violence, respondent had had other encounters with CPS for previous abandonment allegations. Testimony from the caseworkers established that respondent had received all the support that they could give her, but the children had seen something too traumatic for them to be safely returned to respondent's care.

The trial court, in addressing the request for termination, considered a variety of factors in its best-interest analysis, including the abuse suffered by KMS in the presence of IP and KNS, IP's wishes to never see respondent again, IP's therapist's recommendation regarding all three children, the children's need for stability and finality, the children's bond with their maternal grandmother, and the children's success in their grandmother's home. The trial court found that it was in each child's best interests to terminate respondent's parental rights even though all three children were placed with a relative. Therefore, the trial court terminated respondent's rights to all three children, and this appeal followed.

## II. LEGAL ANALYSIS

On appeal, respondent contends: (1) she was denied effective assistance of counsel because her attorney did not obtain expert testimony or challenge her criminal-responsibility report (CRR); and (2) the trial court clearly erred by finding that termination of respondent's parental rights was in the children's best interests. We shall address each of these issues in turn.

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent claims that she was denied effective assistance of counsel because her attorney did not secure expert testimony or challenge her CRR.[1] In child protective proceedings, this Court has decided "that constitutional due process indirectly guarantees a right to the effective assistance

---

[1] Respondent also mentions in passing that her trial attorney never requested services for her and that services were never provided to her, but respondent does not address that issue any further in her analysis. Notably, the trial court explained that reasonable efforts were not required to prevent removal under MCL 722.638(1) and MCL 722.638(2) because respondent subjected the children to the aggravated circumstances of "battering, torture, or other severe physical abuse." Respondent does not argue that reasonable reunification efforts should have been ordered, nor does she provide adequate briefing of that issue. "Failure to adequately brief an issue constitutes abandonment." *Seifeddine v Jaber*, 327 Mich App 514, 520; 934 NW2d 64 (2019). Consequently, that argument is abandoned, so respondent's argument is limited to whether she received effective assistance of counsel. See *id*.

of counsel." *In re Londowski*, 340 Mich App 495, 506; 986 NW2d 659 (2022). To prevail on her claim of ineffective assistance of counsel, respondent must show " '(that (1) counsel's performance was deficient, falling below an objective standard of reasonableness,' " and (2) counsel's deficient performance " 'prejudiced the respondent.' " *In re Mota*, 334 Mich App 300, 318; 964 NW2d 881 (2020). If such a claim is preserved, "[w]hether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo." *Id*. In this case, however, respondent neither asserted ineffective assistance of counsel in the trial court nor requested a remand from this Court to develop a record on such a claim. Thus, our review is limited to mistakes apparent on the record. *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017).

Respondent's trial strategy centered on characterizing the incident as an isolated, one-time event. Respondent's counsel requested that the trial court stay the proceedings until respondent's CRR, containing her psychiatric report, was completed and admitted into evidence. The trial court granted that request on September 13, 2022, explaining that "I think for this short time, the value of getting the report now and reviewing that before I make a decision is—it's just important and it could include some valuable information I don't know at this point." Once respondent's CRR was admitted at the continued termination hearing on March 2, 2023, counsel for respondent stated that "[w]hat was abundantly clear to me as I read and reread the report [was] that this [was] a one-time event in [respondent's] life." Thus, respondent's counsel believed that the information contained in the CRR bolstered respondent's strategy of showing that the incident was an isolated, one-time event.

Respondent argues that her attorney should have specifically highlighted the portion of her CRR that stated: "Discharge diagnosis was major depressive disorder, single episode, severe with psychotic features." But the trial court had access to the full CRR and "concur[red] with the idea that the evidence point[ed] to a great possibility of voluntary intoxication or voluntarily consuming substances which induce psychosis." Therefore, highlighting a specific portion of the CRR would have been redundant and would not have furnished any new information. Accordingly, respondent is not entitled to relief on her claim of ineffective assistance of counsel predicated on her attorney's handling of the CRR.

Similarly, in faulting her attorney for failing to obtain expert testimony, respondent has not identified a different conclusion an expert witness could have drawn from a review of respondent's medical records. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). An unsuccessful trial strategy does not inherently render that trial strategy unreasonable and rebut the presumption of effective assistance. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). "A strategy is also not ineffective because it entails taking calculated risks, especially if the range of available options for the defense is meager." *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020). Here, counsel's strategy to draw on the CRR to support respondent's theory of the case was reasonable even though it was unsuccessful.

Even assuming, for the sake of argument, that respondent's counsel performed deficiently by failing to offer expert testimony or challenge respondent's CRR, respondent has failed to show prejudice resulting from those deficiencies. The evidence in this case overwhelmingly supported terminating respondent's parental rights. Testimony and videotape evidence depicted respondent

lying on top of KMS and squeezing KMS while making homicidal statements. That act of violence took place in front of KNS and IP. Respondent was undressed from the waist down, and her "legs were spread out, and the kids were sitting right there." When officers arrived on the scene, KMS's face was bloodied and she was going in and out of consciousness. KMS suffered "multiple injuries including significant abrasions on her face and a small hematoma on her scalp, the frenulum had a tear and a closed fracture of the parietal bone of her skull on the left side." Yet respondent only briefly asked how KMS was doing when a law-enforcement officer spoke to her about KMS at the hospital. Accordingly, respondent's claim of ineffective assistance of counsel necessarily fails for want of prejudice.

## B. BEST INTERESTS

Respondent next contends that the trial court clearly erred in finding that termination of her parental rights was in her children's best interests. Specifically, respondent points out that the children were placed with a relative and that the trial court did not properly weigh that factor. We review a trial court's best-interest finding for clear error. MCR 3.977(K); *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). A factual finding is clearly erroneous if we have a definite and firm conviction that a mistake was made. *Id*. We afford deference to the "trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009). We also defer to the trial court's special opportunity to judge the credibility of witnesses. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

When assessing best interests, the trial court must focus on the child, rather than the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). Whether "termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90. The trial court may consider factors such as the children's bond to the parent, the parent's parenting ability, the children's need for permanency, stability, and finality, *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012), how long the children have lived in their present home, and the likelihood that they could be returned to the parent's home "within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). If a child is placed with a relative, that weighs against termination, *In re Olive/Metts*, 297 Mich App at 43, and the failure to consider such a placement in the best-interest analysis requires reversal. *Id*.

Respondent asserts that the trial court did not provide specific reasons for why termination was in the best interests of KMS and KNS aside from the injuries KMS sustained. But the record shows that the trial court conducted an individual best-interest analysis for each of the children. Specifically, the trial court stated:

> The Court finds that the prosecutor has met her burden with regards to prong one and, therefore, I will move on to the best interest factors.
>
> Taking into consideration [foster care worker] Laura Borek's testimony that [IP] has been placed with his maternal grandmother since 2021, he feels safe, he doesn't want to see his mother again, and she reports that his therapist believes that it would be traumatic for him to see his mother again.

-4-

[KNS], it is also in her best interest as she is in a stable, loving home with grandma and her siblings. And she witnessed what happened and it was a significant trauma to her to witness those things. And further, the therapist believes that with regards to all three children, actually, that it would be pretty traumatic for them to see their mother again.

And with [KMS], she's in a stable, loving home with the grandmother and she is the child that suffered the serious injuries at the hand of her mother.

All three children will be raised within their culture and family traditions and have connections with family. So despite our relative placement, the children's best interests are served by terminating [respondent's] parental rights.

Further, our guardian ad litem, Mr. Merwin, supports the termination and says, yes, it is in the best interest of all of the children. The maternal grandmother is ready and willing and able to care for these children. The children will be able to stay together. And he reports that despite their being relative placement, it is still in the children's best interest.

These children need stability, permanency and safety and the feeling of being safe with their grandmother. And again, she's willing to provide permanency through guardianship. All the children are doing well in this placement and they are bonded with . . . their grandmother. The Court agrees that by a preponderance of the evidence, it is in the best interests of all three children to terminate [respondent's] rights. Therefore, at this time, the Court will terminate [respondent's] rights to [the children].

Simply stated, the trial court considered the fact that the children were in a relative placement, yet still determined that it was in each child's best interests to terminate respondent's parental rights. The trial court did not commit clear error in making those determinations.

Affirmed.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates