*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

STEVEN MICHEAL COOK, also known as
STEVEN MICHAEL COOK,

      Defendant-Appellant.

UNPUBLISHED
June 27, 2024

No. 364181
Calhoun Circuit Court
LC No. 2019-001537-FC

Before: O'BRIEN, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (penetration committed by an individual 17 years of age or older against an individual less than 13 years of age); and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a); MCL 750.520c(2)(b) (sexual contact by an individual 17 years of age or older against an individual less than 13 years of age). The trial court sentenced defendant to serve 25 to 50 years' imprisonment for the CSC-I conviction and 71 months to 15 years' imprisonment for the CSC-II conviction. We affirm.

## I. Background

This case arises out of sexual assaults that defendant perpetrated on the daughters of his girlfriend when they lived together in Battle Creek. The mother testified that she met defendant in 2014, when her two daughters, NH and MH, were four and five years old. In the fall of 2018, NH reported to her counselor at school that defendant had touched her vagina. Thereafter, MH also disclosed that defendant touched her vagina and that his fingers penetrated her vagina.

Two years prior to these allegations coming to light, there was an incident between NH, MH and defendant's son WC which had resulted in counseling for the family with Debra Ingle,

-1-

M.S.W.[1] At this counseling, WC stated that he and his sisters[2] had inappropriately touched each other, but when asked what he meant he said that he did not know. Ingle later expressed concern that both defendant and his girlfriend (NH and MH's mother) may have coached their children regarding this counseling. Ingle never documented any claims of sexual assault or rape from NH or MH regarding WC.

The prosecutor charged defendant with one count of CSC-I and two counts of CSC-II. Defendant was found guilty of one count of CSC-I and one count of CSC-II related to MH's claims of abuse, but the jury could not agree on a verdict for the count of CSC-II related to NH's claims of abuse, and that charge was dismissed. Defendant now argues on appeal that the trial court erred by excluding evidence that NH and MH made prior false accusations of rape or other sexual misconduct against his son, WC. Defendant also claims that at least one juror improperly interpreted his choice not to testify in his own defense as a sign of guilt. We disagree with defendant's allegations of error.

## II. Analysis

### A. Ingle's Testimony

Pursuant to MRE 103(a)(2),[3] a defendant may not predicate a claim of evidentiary error on the exclusion of evidence unless the defendant's substantial rights were affected and the defendant made the substance of the evidence known to the court through an offer of proof. *People v Thorne*, 322 Mich App 340, 352; 912 NW2d 560 (2017). Defendant submitted testimony from Debra Ingle, who provided counseling to WC, NH, and MH in 2016. However, Ingle did not testify that NH or MH accused WC of sexual assault. Further, the trial court specifically ruled that, contrary to defendant's similar claims in a child protective proceeding involving himself and WC, there was no evidence that NH or MH accused WC of sexual assault or any similar wrongdoing. Therefore, Ingle's testimony contained no evidence of prior false claims of sexual assault, and is therefore irrelevant to defendant's criminal case.

Defendant argues that Ingle's testimony suggested that NH was coached by her mother when she made allegations about WC in 2016. Again, the record reflects that NH did not make allegations about WC; rather, the children only accused each other of "inappropriate" actions, such as going into each other's rooms, but there were no allegations of rape or sexual assault. Moreover, Ingle's observation during counseling that the mother may have coached NH about WC had no bearing on any claim involving defendant's charges of criminal sexual conduct. Further, even if

---

[1] Apparently, a Facebook post NH and MH's mother made about boys sticking their hands into girls' panties led to a Children's Protective Services investigation and the children as well as the entire blended family receiving counseling with Ingle.

[2] WC, NH and MH lived together in the same home for approximately 5 years but were not blood relatives.

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

defendant could show that NH's mother coached NH in a prior, unrelated, family court proceeding, defendant cannot show that he was prejudiced by the trial court's exclusion of that evidence. See MRE 103(a)(2). The jury did not convict defendant of any claims involving NH, so Ingle's testimony about any alleged coaching of NH had no bearing on the verdict for defendant's sexual abuse of MH.

Defendant next argues that the trial court erred by failing to admit Ingle's testimony from the child abuse and neglect adjudication hearing under MRE 804(b)(1). Again, we disagree.

We "review for an abuse of discretion a trial court's decision to admit or exclude evidence," and we review any preliminary legal questions of law de novo. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes . . . ." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). MRE 804(b)(1) states that, if the declarant is unavailable, former testimony is not excluded as hearsay if the testimony "was given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." The parties do not dispute that Ingle was unavailable to testify at defendant's criminal trial in 2022 because she died in 2021, so defendant is seeking to admit her testimony under an exception to the hearsay rule.

The neglect adjudication involving defendant's parental rights to WC included Ingle's testimony regarding NH's and MH's relationship with WC; again, this testimony contained no assertions of sexual abuse. In that earlier proceeding, defendant sought to show that during counseling with Ingle, NH's mother coached NH and, therefore, she may have coached NH and MH to make the allegations against defendant.[4] The record reflects that at the 2018 neglect proceedings involving WC and defendant, the parties had an opportunity to cross-examine Ingle at length about her observations during counseling with NH, MH, and WC. This may be enough to satisfy the hearsay exception under MRE 804(b)(1), but that does not make Ingle's testimony relevant, which is always a requirement for admissibility. See MRE 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In this case, the trial court correctly ruled that Ingle's testimony was not relevant to any fact at issue in defendant's case because he failed to show any nexus between Ingle's observation regarding NH's demeanor in her mother's presence in an unrelated counseling

---

[4] Note to the Panel: We have requested and are awaiting copies of the "two inches" of transcript that the criminal trial court reviewed from the neglect trial between the March 8, 2022 motion hearing and its March 17, 2022 motion hearing where it denied defendant's motion to admit Ingle's prior testimony. Defendant wanted the testimony to prove coaching and the prior false accusations of rape. While it appears from the limited pages of transcript that defendant provided to this Court that Ingle found some evidence of coaching between mother and NH, neither girl made allegations of rape against WC, and there were no allegations of coaching between mother and MH—the child that the jury apparently found credible. See 3/17/22 Motion Hearing, pp 12-17 (MAPPIS Event 37, pp 33-38).

session and accusations of repeated sexual molestation by defendant. And, notably, the jury convicted defendant regarding the sexual assault of MH, not NH.

Defendant also maintains that the trial court should have conducted an *in camera* review of Ingle's counseling records from 2016 and that the court should have allowed him to have an unredacted copy of the Children's Protective Services investigation regarding the allegations involving WC. This Court reviews a trial court's ruling on whether records are discoverable or protected by a privilege for an abuse of discretion. *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994).

In *People v Davis-Christian*, 316 Mich App 204, 207-208; 891 NW2d 250 (2016), this Court stated:

> "Discovery should be granted where the information sought is necessary to a fair trial and a proper preparation of a defense." *People v Laws*, 218 Mich App 447, 452; 554 NW2d 586 (1996). Nevertheless, defendants generally have no right to discover privileged records absent certain special procedures, such as an *in camera* review of the privileged information conducted by the trial court. MCR 6.201(C)(1) and (2). In a criminal sexual conduct prosecution, an in camera review "promotes the state's interests in protecting the privacy rights of the alleged rape victim while at the same time safeguards the defendant's right to a fair trial." *People v Hackett*, 421 Mich 338, 350; 365 NW2d 120 (1984).
>
> *Stanaway* explained the proper procedure a court must use to determine whether to grant an in camera review of privileged material:
>
> > [W]here a defendant can establish a reasonable probability that the privileged records are likely to contain material information necessary to his defense, an in camera review of those records must be conducted to ascertain whether they contain evidence that is reasonably necessary, and therefore essential, to the defense. Only when the trial court finds such evidence, should it be provided to the defendant. [*Stanaway*, 446 Mich at 649–650.]
>
> However, the *Stanaway* Court explained that "disclosure should not occur when the record reflects that the party seeking disclosure is on 'a fishing expedition to see what may turn up.' " *Id*. at 680, quoting *Bowman Dairy Co v United States*, 341 US 214, 221; 71 S Ct 675; 95 L Ed 879 (1951). A defendant "is fishing" for information when he or she relies on generalized assertions and fails to state any "specific articulable fact" that indicates the privileged records are needed to prepare a defense. *Id*. at 681. The Michigan Supreme Court amended MCR 6.201(C) in 1996 to reflect the rule announced in *Stanaway*. MCR 6.201, 451 Mich cx, cxi (staff comment).

MCR 6.201(C)(2) states that, "[i]f a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely

to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records."

Defendant admitted that the only basis he had for requesting the records was his own belief that NH and MH lied about WC sexually assaulting them and Ingle's testimony about her counseling sessions. Ingle's testimony shows that there was no false accusation by either NH or MH about WC. Because defendant relied on transcripts from defendant's family court adjudication in which the court specifically ruled that nothing in the records supported defendant's claims of false accusations or coaching, and nothing in the 2016 records was relevant to the claims against defendant in 2019, defendant has failed to show that viewing the records would be anything more than a fishing expedition. For that reason, the trial court acted within its discretion to deny defendant's request for his failure to show a good-faith belief, grounded in articulable fact, that there was a reasonable probability that the records were likely to contain material information necessary to the defense.

B. Pornography Claim and Alleged Jury Misconduct

Defendant also argues that the trial court should not have excluded evidence that NH and MH viewed pornography and engaged in sexual conduct with each other or with other children in the house. Defendant appended one page of testimony in which NH and MH's mother stated that she learned through counseling that NH and MH viewed pornography at some point. This does not amount to an offer of proof that NH or MH engaged in sexual playacting to mimic pornography, as defendant asserts. There is no evidence to support defendant's assertion, and therefore, under MRE 103(a)(2), defendant failed to make an offer of proof that this occurred, and he cannot claim that he was prejudiced by the trial court's exclusion of evidence on this issue.

Defendant also argues that one or more jurors told him that they believed that his decision not to testify at trial influenced their decision to find him guilty. Defendant waived this issue by failing to include it in his statement of questions presented in his appeal brief. See *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011). We further note that the trial court explicitly instructed the jurors that they must not allow defendant's decision not to testify to affect their verdict in any way. Jurors are presumed to follow their instructions, *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998), and defendant has presented no evidence to show that any juror acted improperly to support his claim. See *People v Miller*, 482 Mich 540, 552; 759 NW2d 850, 859 (2008).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ Kathleen A. Feeney

-5-