*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRIAN DEWAYNE MCELROY,

        Defendant-Appellant.

UNPUBLISHED
December 04, 2024
9:48 AM

No. 367703
Kent Circuit Court
LC No. 22-004093-FH

Before: BOONSTRA, P.J., and MURRAY and CAMERON, JJ.

PER CURIAM.

Defendant appeals, by leave granted,[1] his conditional-guilty-plea sentences of 1½ to 10 years' imprisonment for carrying a concealed weapon, MCL 750.227, 1½ to 10 years' imprisonment for possessing a firearm as a convicted felon (felon-in-possession), MCL 750.224f, and two years for carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose after two Grand Rapids police officers observed defendant speeding in a residential area. The officers followed defendant without activating their lights, during which time they observed defendant fail to stop at a stop sign twice, and learned that the car's registration was expired. The officers activated their lights, pulled defendant over, and conducted a traffic stop. During the stop, the officers found what appeared to be drugs. An expanded search yielded drug paraphernalia in the car as well as a firearm under the driver's seat, which defendant confessed belonged to him. Defendant was arrested and charged as noted.

Defendant moved to suppress all evidence from the stop. During the evidentiary hearing, defendant sought to testify on his own behalf. He also wanted to call a witness to testify to

---

[1] *People v McElroy*, unpublished order of the Court of Appeals, entered November 6, 2023 (Docket No. 367703).

contradict the officers' prior testimonies about the facts of the stop. The trial court denied these requests, reasoning these testimonies were not relevant to the question of whether the officers had reasonable suspicion to conduct the stop. Defendant also asked the trial court to review the dashcam footage from the officers' car, which would purportedly undermine their credibility. The trial court refused to watch the videos, because the videos began only 30 seconds before the officers activated their lights, which occurred after the officers observed defendant speeding. The trial court was not convinced the slight discrepancies in the officers' recitation of the events were sufficient to undermine their credibility. Therefore, it denied defendant's motion, as well as his subsequent motion for reconsideration. Defendant now appeals.

## II. STANDARD OF REVIEW

"We review a trial court's evidentiary decisions for an abuse of discretion." *People v Danto*, 294 Mich App 596, 598-599; 822 NW2d 600 (2011). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*. at 599. "This Court reviews for clear error findings of fact regarding a motion to suppress evidence." *People v Fosnaugh*, 248 Mich App 444, 450; 639 NW2d 587 (2001). "Clear error exists when we are left with a definite and firm conviction that a mistake was made." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). The trial court's ultimate decision on a motion to suppress and the question of whether the Fourth Amendment was violated are reviewed de novo. *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009); *Fosnaugh*, 248 Mich App at 450.

## III. ANALYSIS

Defendant argues the trial court violated his constitutional right to present a complete defense by refusing to permit him to call witnesses at the evidentiary hearing, and by refusing to watch the requested videos. We disagree.

"In order to effectuate a valid traffic stop, a police officer must have an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *Hyde*, 285 Mich App at 436 (quotation marks and citation omitted). "Generally, if evidence is unconstitutionally seized, it must be excluded from trial." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012). Stopping and temporarily detaining a driver is reasonable when an officer witnesses the driver violate the Michigan Vehicle Code (MVC), MCL 257.1 *et seq*. *People v Dunbar*, 499 Mich 60, 66; 879 NW2d 229 (2016). This includes when an officer suspects a driver is speeding, MCL 257.628(9), failing to stop at a stop sign, MCL 257.649(8), or operating a vehicle without valid registration, MCL 257.255(1).

In this case, the officers' testimonies about the events of the traffic stop were, at times, inconsistent. Their recollections of the route they took when following defendant were different, and they both acknowledged that, after stopping defendant, they told him he failed to stop at three stop signs—not two. Further, neither mentioned the expired registration to defendant. But, even so, both officers testified they saw defendant speeding and failing to stop at two stop signs, and that the registration of the car defendant was driving was expired. The trial court heard this testimony, which included the officers' inconsistencies. Thus, the trial court was not required to hear from defendant or his witness about these inconsistencies, because they were readily apparent from the officers' testimonies.

Furthermore, a defendant's right to testify "is not absolute, and a defendant remains subject to the established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Thorne*, 322 Mich App 340, 351-352; 912 NW2d 560 (2017). The determination of whether an officer had reasonable suspicion to effectuate a stop "depends on whether the officer's action was justified at the inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *People v Williams*, 472 Mich 308, 314; 696 NW2d 636 (2005) (quotation marks and citation omitted). As the trial court correctly noted, "[r]easonable suspicion arises from the combination of an *officer's* understanding of the facts and his understanding of the relevant law." *Heien v North Carolina*, 574 US 54, 61; 135 S Ct 530; 190 L Ed 2d 475 (2014) (emphasis added). It is the *officer's perception*, not defendant's version of the facts, that contributes to the determination of whether reasonable suspicion existed. *Id*. As the trial court recognized, neither defendant's testimony, nor the testimony of any proposed witness, would be relevant to this determination. MRE 401; MRE 402. Thus, defendant did not have the right to present witnesses in this specific circumstance, and the trial court did not abuse its discretion in precluding him from doing so. *Thorne*, 322 Mich App at 351-352.

Defendant also claims the trial court abused its discretion by refusing to review the video evidence, because it undermined the credibility of the officers, thus calling into question whether they had reasonable suspicion. While we conclude the trial court abused its discretion by refusing to watch the videos, any error was harmless. The videos were relevant insofar as they concerned the officers' credibility, which was directly at issue when considering whether they had reasonable suspicion. MRE 401; MRE 402. The officers testified they saw defendant fail to stop twice, but the dashcam footage shows defendant stopping, albeit very briefly, at one of the stop signs noted by the officers before continuing. This evidence could have been used to undermine the officers' credibility in that they claimed defendant failed to stop.

However, the trial court, in refusing to review the videos, stated that even if it had watched the videos and seen that defendant did not run the stop sign, this would not "negate everything else the officer[s] testified to." After acknowledging defendant's concerns, the trial court still found the officers to be credible, and this Court defers to the trial court's assessment of a witness's credibility. *People v Ryan*, 295 Mich App 388, 396; 819 NW2d 55 (2012). It is undisputed that the videos do not show the time at which the officers claimed to see defendant speeding. While there were some slight discrepancies in the officers' recollections, and an acknowledged error in the police report, there is nothing in the record or the video that would have caused the trial court to find the officers' testimonies unbelievable. Because this testimony sufficiently supported the officers' reasonable suspicion, *Hyde*, 285 Mich App at 436, there is no indication that the trial court's ruling would have changed had it watched the videos.

Affirmed.

/s/ Mark T. Boonstra
/s/ Thomas C. Cameron